COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Esther Skipper, Individually and on Behalf of All Similarly Situated Non-Supervisory Female Employees of American Telephone and Telegraph Company, Long Lines Department, Plaintiffs,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, LONG LINES DEPARTMENT, Defendants.

WOMEN IN CITY GOVERNMENT UNITED et al., Plaintiffs,

v.

The CITY OF NEW YORK et al., Defendants.

Nos. 73. Civ. 3353, 74 Civ. 304.

United States District Court, S. D. New York, Civil Division.

July 30, 1974.

Cohn, Glickstein, Lurie, Ostrin & Lubell, New York City, Kane & Koons, Washington, D. C., for plaintiffs Communications Workers et al. by Mary K. O'Melveny, Jonathan W. Lubell, New York City, Barbara Schain, Law Student, of counsel.

Steptoe & Johnson, Washington, D. C., Jim G. Kilpatric, New York City, for defendant American Tel. & Tel. Co., Long Lines Dept. by Thompson Powers, James D. Hutchinson, Kenneth I. Jonson, Washington, D. C., of counsel.

Linda Colvard Dorian, Washington, D. C., Office of the Gen. Counsel, Equal Employment Opportunity Commission, amicus curiae.

Rabinowitz, Boudin & Standard, New York City, for plaintiffs Women in City Government United et al. by K. Randlett Walster, New York City, of counsel.

Mirkin, Barre, Saltzstein & Gordon, P. C., Great Neck, N. Y., for defendants Social Service Employees Union Local 371 and Social Service Employees Union Local 371 Welfare Fund by Gerald J. Barre, Stephen F. Gordon, Jeffrey S. Dubin, Great Neck, N. Y., of counsel.

Adrian P. Burke, Corp. Counsel, New York City, for defendants City of New York et al. by David W. Fisher, New York City, Charles W. Segal, Kew Gardens Hills, N. Y., of counsel.

Breed, Abbott & Morgan, New York City, for Blue Cross and Blue Shield of Greater New York by Donald B. da Parma, Elliott Abrams, New York City, of counsel.

Trubin, Sillcocks, Edelman & Knapp, New York City for Group Health Inc. by Ross Sandler, Joseph A. Klein, New York City, of counsel.

Julius Topol, New York City, for D.C. 37 and D.C. 37 Health and Security Plan.

Delson & Gordon, New York City, for defendants United Federation of Teachers and United Federation of Teachers Welfare Fund.

Edward L. Johnson, New York City, for defendant New York City Housing Authority.

## OPINION

WHITMAN KNAPP, District Judge.

The complaints in these unrelated class actions make quite similar allegations. They each allege inter alia that the several defendants have, in the treatment of pregnant employees, violated the proscription against discrimination on the basis of sex contained in Title VII of the Civil Rights Act of 1964.

Paragraph 7 of the CWA complaint alleges in part:

"the defendant has promulgated and maintained policies  *  *  *  which limit the employment opportunities of its female employees because of sex by failing and refusing to provide equal rights, benefits and privileges to females under temporary disability due to pregnancy or childbirth or complications arising therefrom, as are made available to its male employees under temporary disability."

Paragraph 51 of the WICGU complaint (plaintiffs' first cause of action) alleges:

"Defendants  *  *  *  have  *  *  * discriminated against the plaintiffs in this action in the terms and conditions of employment because of sex, in that the health and hospitalization insurance plans negotiated and approved by defendant  *  *  *  offer substantially fewer benefits for pregnancy and pregnancy-related conditions than for other medical and surgical problems requiring hospital and medical care."

The remaining ten causes of action alleged in the WICGU complaint may fairly be characterized as variations on the theme of paragraph 51, the differences being in the particular defendant named and the type of policy attacked — health and hospitalization insurance or disability benefit.

Motions were argued before me in both cases on May 21, 1974. In CWA the motions concerned class action treatment. In WICGU the major motion had to do with exhaustion of Title VII remedies.

While those motions were sub judice, the Supreme Court decided Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256. We then scheduled argument as to whether in light of Aiello— especially footnote 20 of the opinion— this court should sua sponte dismiss the complaints in these actions. Having received briefs and heard argument, we so dismiss the complaints with leave to replead, and certify a question to the Court of Appeals.

In Aiello the Supreme Court held that California's disability insurance plan which excludes normal pregnancy from coverage does not violate the Equal Protection Clause of the Fourteenth Amendment. Thus, inter alia, the Court observed 417 U.S. at 494, 94 S.Ct. at 2491):

"We cannot agree that the exclusion of this disability from coverage amounts to invidious discrimination under the Equal Protection Clause. California does not discriminate with respect to the persons or groups who are eligible for disability insurance protection under the program."

The Court found legitimate and "wholly non-invidious" California's reasons for not wanting a more comprehensive program—the state's desire to keep the contribution rate low, to keep the program self-supporting, and to provide adequate benefits for some disabilities rather than inadequate benefits for all (id.). The Court further found "no evidence in the record that the selection of the risks insured by the program worked to discriminate against any definable group or class  *  *  * ." (id.)

The footnote (footnote 20) to the sentence just quoted provides—in our view —the key to the Court's decision. It flatly states that distinctions involving pregnancy do not constitute discrimination because of sex (or gender). In the first paragraph of that footnote the

Court, in answer to arguments presented by the dissenting justices, observed:

"The dissenting opinion to the contrary, this case is thus a far cry from cases like Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225, and Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583, involving discrimination based upon gender as such. The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical condition—pregnancy—from the list of compensable disabilities. While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification like those considered in *Reed, supra,* and *Frontiero, supra.* Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretext designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition."

In the second paragraph, the Court synthesized its position:

"The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups—pregnant women and nonpregnant persons. While the first group is exclusively female, the second includes members of both sexes. The fiscal and actuarial benefits of the program thus accrue to members of both sexes."

At oral argument in the case at bar, counsel for both sets of plaintiffs and counsel for the EEOC as amicus curiae, insistently argued that *Aiello* is distinguishable on many grounds. The most significant distinction was said to be that the instant cases involve disparate treatment by employers—private as well as municipal—of pregnant employees, while *Aiello* involved a social welfare policy created by state legislation. While deference is to be shown to legislative judgments on social welfare matters, the argument goes, no such deference to allegedly discriminatory employers is warranted under Title VII.

The flaw in this argument is that it begs the question. The threshold question is whether disparity of treatment between pregnancy related disabilities and other disabilities can be classified as discrimination because of sex (or gender). If, as footnote 20 seems to suggest, it cannot be so classified, then the further question of whether such disparity is justified—or less justifiable in the employment context than in some other context—can never be reached.

In other words, if the *Aiello* Court had found that the California scheme did discriminate on the grounds of sex (or gender) but must nevertheless be upheld because of the deference due to California's sovereign right to make choices in methods of providing social welfare, the holding would clearly be inapplicable to a case arising under Title VII where no such deference is required. But such, as we read it, was not the holding of the Court. The holding was that California's treatment of pregnancy related disabilities did not in and of itself constitute a discrimination based on sex (or gender). Such a holding precludes relief under Title VII even more clearly than under the Fourteenth Amendment. Under the Amendment it would be open to pregnant women to argue that it was irrational to single them out as a class even if the singling out were not sex related. No such argument is open under Title VII, which deals only with discrimination "because of . . . sex." 42 U.S.C. § 2000e–2(a)(1).

■ Plaintiffs get scant help from the cases they cite for the proposition

that discrimination on grounds of sex (or gender) means something different when the Fourteenth Amendment is involved than when Title VII comes into play. The cases cited for that proposition are in our view more readily explained by the respective dates of decision than by the rubric under which they were decided. Thus, West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, upholding protective legislation, was decided in 1937, while Weeks v. Southern Bell Telephone (5th Cir.) 467 F.2d 95, which ruled the opposite way, was decided in 1972. Similarly, Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163, was decided in 1948. It seems a safe guess that, in light of Frontiero v. Richardson (1973) 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583, Phillips v. Martin Marietta Corp. (1971) 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613, and Sprogis v. United Air Lines (7th Cir. 1971) 444 F.2d 1194, cert. den. 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543, both *West Coast Hotel* and *Goesart* would be decided differently today. In brief, *Aiello* does not represent a retreat from the Court's modern view as to discrimination on grounds of sex (or gender), but—as footnote 20 plainly indicates—a finding that disparity of treatment based on pregnancy does not in and of itself constitute such discrimination.[1]

Having come to this conclusion as to the effect of *Aiello,* the question arises as to what should be done with these lawsuits at this stage of the proceedings. A review of the complaints makes two things plain. *First,* both complaints were obviously drawn for the purpose of invoking the law as declared by the *Aiello* District Court (before it was reversed) to the effect that preg-

nancy-related disparity "in and of itself" constituted discrimination on grounds of sex (or gender). *Second,* if principles of "notice pleading" were to be applied, both complaints could be read as broad enough to permit proof of the type of "invidious discrimination" that would justify relief under either the Fourteenth Amendment or Title VII.

Any one of three courses of actions would therefore seem possible:

(1) The complaints could be construed under the principles of notice pleading and the parties be allowed to proceed to trial, with the result that the question of the correctness of our interpretation of *Aiello* could be presented to the Court of Appeals on a full trial record.

(2) The complaints could be construed —as the plaintiffs originally intended—to invoke the pre-*Aiello* law that disparity with respect to pregnancy-related disabilities in and of itself constituted discrimination on grounds of sex (or gender), and dismissed without leave to replead, thus giving plaintiffs an appeal as of right to the Court of Appeals.

(3) The complaints could be so construed but dismissed with leave to replead, and the question of *Aiello's* application to the cases at bar certified to the Court of Appeals.

Upon reflection, only the third of these possible courses of action seems appropriate.

If the first possible course were followed, the plaintiffs would be in almost an impossible position of having to wage a "two front war", designed to present the Court of Appeals with a record cal-

---

1. By way of illustrating the Court's point, a woman's organization (e. g. a woman's club or actresses' workshop) could hardly be taxed with discriminating on grounds of sex (or gender) if its medical insurance policies provided no coverage for pregnancy-related disabilities. However such disparity of treatment of pregnant persons (who, not

necessarily relevant so far as concerns the Amendment, happened to be women) might well run afoul of the equal protection demands of the Fourteenth Amendment, if it could be shown to involve state action and not to be economically or otherwise justifiable.

culated to take advantage of pre-*Aiello* law that pregnancy-related disparity in and of itself established a prima facie case under Title VII and designed at the same time to establish a fall back position that the particular practices pursued by these defendants—or some of them—were "invidious" and therefore in violation both of Title VII and of the Fourteenth Amendment. It goes without saying that the methods of proof appropriate to these two possible positions are quite disparate.

Moreover, oral argument on the problems presented by *Aiello* was devoted in large part to trying to ascertain how, if at all, the Court of Appeals could benefit by having the *Aiello* question presented to it on a full trial record. Counsel for both sets of plaintiffs and for EEOC as amicus curiae—although exhibiting the advocate's customary reluctance to yield a point—finally conceded that months of pre-trial discovery and weeks of trial would produce no new information which would assist the Court of Appeals in determining what effect, if any, *Aiello* should have on these lawsuits.

Finally, absent an authoritative determination of *Ailleo's* effect, it would be almost impossible to define the parameters of the appropriate classes and subclasses. Plaintiffs, in each case, ask in effect for a class including all women of child bearing age. If our interpretation of *Aiello* be correct it would seem that the class in each suit would have to be confined to women presently pregnant plus those who had actually been denied pregnancy benefits. On the other hand if *Aiello* be inapplicable, the class might well be much more extensive.

The second possible course (dismissal without leave to replead) would present the Court of Appeals with several basically irrelevant questions, such as whether or not plaintiffs had been fairly treated in having their complaints so narrowly construed without an opportunity to replead. Moreover, should the Court affirm the dismissal, plaintiffs might be saddled with wholly unneces-

sary statute of limitations problems if they then attempted to obtain relief on the theory that defendants, or any of them, had engaged in "invidious" conduct.

We shall therefore follow the third possible course and certify to the Court of Appeals pursuant to 28 U.S.C. § 1292(b) the question whether *Aiello* has established—for the purposes of these actions or either of them—that disparity between the treatment of pregnancy-related and other disabilities does not of itself constitute discrimination on the basis of sex (or gender) within the prohibition either of Title VII or of the Fourteenth Amendment.

We believe that this opinion has demonstrated—and we so certify—that this question is controlling, and one as to which "there is substantial ground for difference of opinion", and that its resolution would "materially advance the ultimate termination of the litigation".

So ordered.