CEDAR RAPIDS COMMUNITY SCHOOL DISTRICT and Cedar Rapids Board of Education, Appellants,

v.

Joan PARR et al., Appellees,

and

Elaine Drewis and All Other Named Intervenors, Intervenors,

and

The Johnston Community School District, Amicus Curiae,

and

Iowa State Education Association, Amicus Curiae.

No. 2–56518.

Supreme Court of Iowa.

March 19, 1975.

James R. Snyder and M. G. Hardesty, Jr., Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellants.

Richard C. Turner, Atty. Gen., and Roxanne Barton Conlin, Asst. Atty. Gen., for appellees.

Lee H. Gaudineer, Jr., Austin, McDonald, Myers, Peterson & Gaudineer, Des Moines, for amicus curiae The Johnston Community School Dist.

Marvin R. Adams and Anna I. Shinkle, Dreher, Wilson & Adams, Des Moines, for amicus curiae, Iowa State Ed. Ass'n.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, HARRIS and McCORMICK, JJ.

RAWLINGS, Justice.

This appeal stems from two related complaints filed April 27, 1972, with the Iowa Civil Rights Commission challenging legality of the Cedar Rapids Community School District maternity leave regulation. The matter comes to us from an adjudication by Linn District Court holding school district regulations violative of The Code 1971, Section 105A.7, quoted *infra*. We affirm in part, reverse in part.

Complainants in this case, Joan Parr and Judy McCarthy, were teachers in the Cedar Rapids Community School District (school district).

Joan Parr, a language arts teacher at Harding Junior High School until April 10, 1972, was asked to terminate her duties due to pregnancy in accord with a 1970 school board regulation.

Judy McCarthy, a physical education instructor at Washington High School until March 10, 1972, was also requested to temporarily discontinue her teaching duties for the same reason.

At the times material hereto pregnant employees of the school district were subject to this maternity leave regulation:

"a. Maternity leave of one academic year or a portion thereof may be granted to *any married staff member who has successfully completed the probationary period [two years] of contract employment. All staff members on maternity leave shall return to service as of the beginning of an academic year.* Return to service at other times shall be at the convenience of the district.

"b. Maternity leave shall be recommended on an individual basis by the professional staff member's immediate Principal or Supervisor.

"c. *Any professional staff member requesting maternity leave* shall notify the school administration of condition of pregnancy no later than the third month of such condition and *shall begin leave or shall resign no later than the beginning of the sixth month.*

"d. Upon returning to service, such employee on leave shall be granted the total number of leave days accumulated prior to the beginning of the leave of absence in addition to the days allowed for the current year. *However, the employee may not charge the maternity leave of absence or any portion thereof against the accumulated sick leave.*

"e. Maternity leave of absence shall in no way serve to terminate tenure previously acquired by said employee, nor shall it affect the teacher's position on the salary schedule.

"f. Upon returning to service, the teacher shall be assigned to the same duties or those of a similar nature as were performed prior to the beginning of the leave of absence.

"g. A request for an extension of a maternity leave of absence must be made to the Superintendent of Schools prior to the end of the academic year prior to the time of scheduled expiration of the leave already granted. The extension of the leave is at the option of the Board of Education and may be renewed but one time. If the employee does not return to service at the end of the granted leave period, such employee shall forfeit all rights to tenure and sick leave previously acquired." (emphasis supplied).

The foregoing, hereafter referred to as the 1970 regulation, was in effect prior to July 1, 1972.

Mrs. Parr's employment was terminated April 10, 1972, at which time she was two months short of completing the two year probationary period. Consequently, Mrs. Parr was not entitled to maternity leave with automatic right to reinstatement of employment. When Mrs. McCarthy's employment was temporarily discontinued May 10, 1972, her two year probationary period had been completed, thus entitling her to maternity leave with reinstatement of employment upon return to work at the beginning of a new academic year.

Effective July 1, 1972, the above quoted 1970 regulation was amended to eliminate completion of the two year probationary period as a prerequisite to maternity leave. Additionally, the triggering automatic six month leave or resignation provision was abolished. The amendment states:

*"Maternity leave of one academic year or a portion thereof shall be granted to any pregnant staff member. All staff members on leave shall return to service at the beginning of an academic year or earlier at the convenience of the district.*

"Any professional staff member requesting leave shall notify the school administration of the pregnancy no later than the third month of such condition. *Prior to the beginning of the sixth month a pregnant staff member, her physician and her immediate supervisor shall agree upon a beginning leave date.* The agreed date may be reconsidered upon the recommendation of any one of the three parties. In the event of disagreement, the final decision shall rest with the superintendent.

"Upon returning to service, the employee shall receive credit for the total number of sick leave days accumulated prior to the beginning of the leave of absence in addition to the sick leave days allowed for the current year. *However, the employee may not charge the maternity leave of absence or any portion thereof against the accumulated sick leave.*

"Upon returning to service, the staff member shall be assigned to the same duties or those of a similar nature as were performed prior to the beginning of the leave of absence as determined by the superintendent. Any staff member who satisfactorily completes at least 90 days of service in any given year shall be eligible for consideration of a step increase.

"A request for an extension of a maternity leave of absence must be made to the superintendent prior to the end of the academic year prior to the time of scheduled expiration of the leave already granted. The extension of the leave is at the option of the Board of Education." (emphasis supplied).

This amendment will hereafter be referred to as the 1972 regulation.

Both teachers advised their supervisors to the effect they desired to work past the fifth month of pregnancy. Neither such wish was honored. Admittedly, both teachers had obtained permission from their doctors to continue working. As aforesaid, complaints were filed April 27, 1972, with the Iowa Civil Rights Commission charging the 1970 regulation was sexually discriminatory.

Pursuant to an agreement between commission and school district, the latter filed the instantly involved petition for declaratory judgment, thereby requesting an adjudication as to legality of the 1970 regulation. The Cedar Rapids Community School District and Board of Education proceeded as plaintiffs, with Mrs. Parr, Mrs. McCarthy and the commission being named defendants. The Johnston Community School District and Iowa State Education Association, both amicus curiae, aligning respectively with plaintiffs and defendants, have accordingly here submitted their briefs.

In trial court defendants, by answer, for the first time attacked the 1972 regulation as also violative of Code § 105A.7. Defendants thereby further moved they be permitted to represent all teachers similarly situ-

ated and affected by either the 1970 or 1972 regulations.

■ A motion to adjudicate the propriety of defendants' aforesaid class action request was filed by plaintiffs. Significantly, trial court refrained from holding defendants could represent those similarly situated as members of a class. Such other teachers were, however, then given permission to intervene as defendants at any time before trial. Apparently no one did so. Since no request was made for a specific ruling on defendants' class action motion that matter is not presented for review. See Bailey v. Chicago, Burlington & Quincy Railroad Co., 179 N.W.2d 560, 562 (Iowa 1970); State v. Hephner, 161 N.W.2d 714, 717 (Iowa 1968); In re Estate of Scholbrock, 224 Iowa 593, 595–596, 277 N.W. 5 (1938).

At close of trial a decree was entered which held the 1970 regulation sexually discriminatory and violative of § 105A.7 because: (1) pregnancy disabilities, sexually linked to females only, were treated differently from other disabilities in that only in the case of pregnancy was the employee required to either discontinue or terminate employment at an arbitrary date and return to work at an equally arbitrary time; (2) sick leave benefits normally available to all teachers, male and female, absent from school and suffering from a variety of disabilities, were denied to female employees absent due to pregnancy; and (3) nontenured male employees, i. e., those not having taught for two years, absent for physically disabling reasons, were entitled to leaves of absence with right to reinstatement upon returning to work, whereas nontenured female employees absent because of pregnancy-related disabilities were denied leaves of absence (maternity leave) with right to reinstatement. By said decree other teachers similarly situated were, sua sponte, given leave to intervene within twenty days from the date thereof.

The 1972 regulation was declared sexually discriminatory only to the extent it violated element (2), *supra*.

Trial court then awarded Mrs. Parr and Mrs. McCarthy back pay equivalent to what each would have earned throughout the remainder of the 1971–1972 school year had they been allowed to continue working, with proportionate sick leave benefits. Additionally, the school board was ordered to reinstate Mrs. Parr's nontenured employment contract for the ensuing school year.

On appeal by plaintiffs these issues are raised:

A. Whether the 1970 regulation constitutes sex discrimination under Code § 105A.7 in the following respects:

(1) by requiring a pregnant teacher to cease employment at the end of the fifth month of pregnancy and return to employment only at the beginning of a new academic year;

(2) by denying a pregnant teacher sick leave benefits while absent because of pregnancy;

(3) by denying nontenured pregnant employees leave of absence (maternity leave) with consequent right to reinstatement of employment upon recovery from pregnancy.

B. Whether the 1972 regulation constitutes sex discrimination under Code § 105A.7, in the following respect:

(1) by denying a pregnant teacher sick leave benefits while absent because of pregnancy.

C. Whether Mrs. Parr and Mrs. McCarthy waived their respective rights to contest the validity of the 1970 regulation.

D. Whether other Cedar Rapids Community School District teachers were entitled to intervene as defendants after trial.

At the outset we note defendants do not premise their action on the equal protection clause of the Fourteenth Amendment.

■ Review by this court is de novo. See Iron Workers Local No. 67 v. Hart, 191 N.W.2d 758, 761 (Iowa 1971); Code § 105A.10(7); Iowa R.Civ.P. 334, 344(f)(7).

Although not patently clear, it appears the school district attempts to support its regulations in two ways: *First,* they do not discriminate on the basis of sex; *second,* even if there be such discrimination, the regulations are not proscribed by § 105A.7 because they are justified by nature of the occupation. These contentions will be separately considered in the order presented. Before doing so, however, some prefatory observations are in order.

## I. SEX DISCRIMINATION—BURDEN OF PROOF.

Code § 105A.7, the "Iowa Civil Rights Act", thus prohibits unfair or discriminatory employment practices:

"1. *It shall be an unfair or discriminatory practice for any* :

"a. *Person* to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or *to* otherwise *discriminate in employment against* any applicant for employment or *any employee because of* the race, creed, color, *sex,* national origin, or religion of such applicant or employee, *unless based upon the nature of the occupation.* * * *." (emphasis supplied).

See also 14 C.J.S. Civil Rights Supplement § 8.

Noticeably, there exists an exception for cases of sex discrimination where it is shown the classification resulting in different treatment for women is premised upon peculiarities of the occupation. Such is akin to the "bona fide occupational qualification" exception present in the federal fair employment legislation:

"(a) *It shall be an unlawful employment practice for an employer—*

"(1) to fail or refuse to hire or to discharge any individual, or otherwise *to discriminate against any individual* with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's* race, color, religion, *sex,* or national origin; * * *." Section 703(a)(1) of Title VII of the Civil

Rights Act of 1964, 42 U.S.C.A., § 2000e–2(a)(1). [Hereafter Title VII]. (emphasis supplied).

"(e) Notwithstanding any other provision of this subchapter, (1) *it shall not be an unlawful employment practice for an employer to hire and employ* employees * * * *on the basis of* his religion, *sex,* or national origin *in those certain instances where* religion, *sex,* or national origin *is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise,* * * *."* Section 703(e), 42 U.S.C.A., § 2000e–2(e) of the Act. (emphasis supplied).

Code § 105A.9(11) provides, in relevant part: "Complainant shall bear the burden of proving the allegations in his complaint." See Wilson-Sinclair Company v. Griggs, 211 N.W.2d 133, 139 (Iowa 1973). This language clearly refers to the burden regarding existence of actual discrimination. But that does not mean complainant must additionally prove the discrimination, once established, is not based upon the nature of the occupation. Federal courts have consistently held:

"In order to rely on the bona fide occupational qualification exemption an employer has the burden of proving he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved." Newmon v. Delta Air Lines, Inc., 374 F.Supp. 238, 244–245 (N.D.Ga.1973).

"[O]nce the plaintiff has established a prima facie case * * * the burden is on the employer to sufficiently explain the disparity in hiring * * *." Wetzel v. Liberty Mutual Insurance Company, 372 F.Supp. 1146, 1152 (W.D.Pa.1974).

See also McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); Weeks v. Southern Bell Telephone & Telegraph Company, 408

F.2d 228, 232 (5th Cir. 1969); Cheatwood v. South Central Bell Telephone & Tel. Co., 303 F.Supp. 754, 757 (M.D.Ala.1969).

In effectuation of those purposes upon which our fair employment legislation is predicated, this court hereby adopts the foregoing principles. See Wilson-Sinclair Company v. Griggs, 211 N.W.2d at 140–142; Northern Natural Gas Company v. Forst, 205 N.W.2d 692, 695 (Iowa 1973); Code § 105A.11.

We shall also look for guidance to those decisions wherein similar pregnancy-related regulations were tested against both the equal protection clause and fair employment legislation. See Wetzel v. Liberty Mutual Insurance Company, 372 F.Supp. at 1159–1160. See also Communications Wkrs., etc. v. American Tel. & Tel. Co., etc., 379 F.Supp. 679 (S.D.N.Y.1974). See generally Hubbard v. State, 163 N.W.2d 904, 909 (Iowa 1969).

## II. MANDATORY LEAVE POLICY (1970 Regulation).

The school district's regulation provides in part for a *mandatory leave* by tenured employees (those with not less than two years teaching employment) and a *forced termination* for nontenured employees, commencing in each instance no later than the end of the fifth month of pregnancy. Additionally, neither tenured nor nontenured teachers may return to work before commencement of a new academic year, unless approved by the school district.

Plaintiffs vigorously argue this portion of the regulation does not sexually discriminate because men and women are not similarly circumstanced regarding pregnancy. More simply stated, it is contended that since the provision treats all those similarly circumstanced alike, i. e., pregnant teachers, there exists no sex discrimination. This argument misses the mark.

Whether or not pregnant females are treated the same or differently is not the focal point. The true issue is whether all disabilities, pregnancy included, are treated the same. In other words, the question is not whether the regulation has discriminatory application within the class established but rather does it discriminate as to the class singled out. Cf. Rinaldi v. Yeager, 384 U.S. 305, 308–309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966). See generally Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Brown v. Merlo, 8 Cal.3d 855, 106 Cal.Rptr. 388, 392–393, 506 P.2d 212, 216–217 (1973); Commonwealth v. Butler, Pa., 328 A.2d 851, 858 (1974).

Every human, regardless of sex, is subject to crises or physiological disabilities of the body. Here the regulation isolates pregnancy from all other disabilities or physical conditions and makes it subject to the restrictive provisions therein provided. Noticeably, in the case of other illnesses or debilitating conditions an individual is not required to cease employment at a fixed time and return to work following recovery at a set date regardless of the employee's wishes or medical advice. Any person affected by a disability, other than pregnancy, ceases employment and thereafter returns to work when he or she alone deems it proper to do so. But this is not the case where the individual becomes pregnant. Unquestionably, such discriminate treatment is linked to sex alone.

On point is Green v. Waterford Board of Education, 473 F.2d 629, 634 (2d Cir. 1973), where the court aptly observed:

"Plaintiff admits the obvious, that men do not become pregnant, but points out that men, being human, are also subject to crises of the body, some of which, like childbirth, give ample warning: A cataract operation or a prostatectomy, for example, may be planned months ahead. Because male teachers are not forced by defendant Board to take premature leave because of a known forthcoming medical problem, female teachers should not be treated differently. Thus stated, the argument is persuasive, even compelling."

The controverted discriminatory policy was thereupon struck down as violative of equal protection. Accord, Pocklington v. Duval County School Board, 345 F. Supp. 163 (M.D.Fla.1972); Williams v. San Francisco Unified School District, 340 F.Supp. 438 (N.D.Cal.1972). See also Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); 14 C.J.S. Civil Rights Supplement § 61. Factually and rationally distinguishable is Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974).

Pregnancy-related regulations similar to that here involved have also been held invalid when tested against the rigors of Title VII, quoted *supra*, the federal counterpart to our Code § 105A.7. See Wetzel v. Liberty Mutual Insurance Company, *supra*; Newmon v. Delta Air Lines, Inc., 374 F.Supp. at 244; 17 A.L.R.Fed. 768, 774.

Additionally, in Board of Ed. of Union Free Sch. Dist., etc. v. New York State Division of Human Rights, 42 A.D.2d 49, 345 N.Y.S.2d 93, 98 (1973), the court said:

"The policy does present a manifest infirmity by singling out pregnancy among all other physical conditions to which a teacher might be subject as a category for special treatment in determining when leave from duty shall begin. In the case of other conditions such as ailments or the onset of disease, a leave of absence is not required by the petitioner to commence until medical necessity is demonstrated or the teacher voluntarily requests it. Hence, the female teacher is placed under a restriction dependent on sex alone by the terms of the petitioner's policy."

█ We are convinced the pregnancy-leave provision of the 1970 regulation is impermissibly sexually discriminatory and so hold.

In like vein the regulatory provision fixing return to work eligibility at commencement of an academic year after maternity leave, regardless of the teacher's physical or emotional fitness, is sexually discriminatory. See Cleveland Board of Education v. LaFleur, 414 U.S. at 648–651, 94 S.Ct. at 800–801.

### III. SICK (DISABILITY) LEAVE POLICY (1970–1972 Regulations).

Plaintiffs next attack trial court's holding to the effect provisions contained in the 1970 and 1972 regulations which preclude sick (disability) pay to employees while absent due to pregnancy are sexually discriminatory.

█ In support thereof it is argued pregnancy may be treated differently from other disabling conditions which qualify an employee for sick (disability) pay because pregnancy is voluntary. Illustratively, cancer, heart ailments, sclerosis or diabetes are said to be involuntary. But we find no viability in any such differentiation. Several courts have accordingly so held.

Gilbert v. General Electric Company, 375 F.Supp. 367, 381–382 (E.D.Va.1974), thus held the denial of sick pay benefits for childbirth-related disabilities constituted sex discrimination in violation of Title VII:

"G.E.'s contention that because of the voluntary nature of pregnancy they are insulated from the obligation to pay disability benefits to female employees absent from work due to pregnancy-related disabilities loses much viability in light of its policy of providing disability benefits to its male employees for *all* disability, including cosmetic surgery, disabilities arising from attempted suicides, etc.

"While pregnancy is unique to women, parenthood is common to both sexes, yet under G.E.'s policy, it is only their female employees who must, if they wish to avoid a total loss of company induced income, forego the right and privilege of this natural state. (citation omitted). Indeed, under G.E.'s policy the consequence of a female employee exercising her innate right to bear a child may well result in economic disaster, as in the case of at least one of the witnesses who ap-

peared before the Court. No such consequences would befall a male employee who chose to subject himself to a selective operation, such as a vasectomy or cosmetic surgery. Thus, women are required to undergo the economic hardship of the disability which arises from their participation in the procreative experience. The disability is undisputed and inextricably sex-linked. To isolate such a disability for less favorable treatment in a scheme purportedly designed to relieve the economic burden of physical incapacity is discrimination by sex. That such is discriminatory by reason of sex is self evident. G.E.'s contention that the voluntary nature of pregnancy justifies, under Title VII, its treatment of that condition as challenged, must fail. While it is true that women may, under certain conditions, resort to an abortion (citation omitted), it cannot be reasonably argued that Congress in its enactment of Title VII ever intended that an intended beneficiary of that Act forego a fundamental right, such as a woman's right to bear children, as a condition precedent to the enjoyment of the benefits of employment free of discrimination.

"The question of voluntariness is not really the issue. The fact is that the defendant's policy penalizes plaintiffs and members of their class for being women and suffering disabilities to which they alone are inherently susceptible, and this is discriminatory."

In Buckley v. Coyle Public School System, 476 F.2d 92, 94–95 (10th Cir. 1973), the voluntary-involuntary distinction was held to be unplausible:

"We start with the most obvious of the alleged violations and that is the charge of discrimination based on sex. The trial court's attempted distinction between discriminatory and non-discriminatory regulations as being whether the condition involved is one which was involuntary must be rejected. The fact, if it be a fact, that pregnancy is a voluntary status really has nothing to do with the ques-

tion. The point is that the regulation penalizes the feminine school teacher for being a woman and, therefore, it must be condemned on that ground."

To the same effect is this statement in Wetzel v. Liberty Mutual Insurance Company, 372 F.Supp. at 1158:

"Because pregnancy is a natural, expectable, and societally necessary condition, which is certain to occur in a statistically predictable number of women in the labor force, we see no merit in Defendant's argument that it may be excluded from equality of treatment in conditions and benefits of employment because it is a voluntary condition."

See also Sale v. Waverly-Shell Rock Board of Education, 390 F.Supp. 784, U.S.D.C., N.D.Iowa E.D. (1975); Scott v. Opelika City Schools, 63 F.R.D. 144, 147–148 (M.D.Ala. 1974); 23 Drake L.Rev. 806 (1974).

■ Furthermore, the 1972 Session of the Sixty-Fourth General Assembly, ch. 1031, § 1, supplemented Code § 105A.2 by adding thereto the following definitive provision:

" 'Disability' means the physical or mental condition of a person which constitutes a substantial handicap. In reference to employment, under this chapter, 'disability' also means the physical or mental condition of a person which constitutes a substantial handicap, but is unrelated to such person's ability to engage in a particular occupation."

See The Code 1973, § 601A.2(11). See generally 1A Sutherland, Statutory Construction, § 22.24 (Sands 4th ed. 1972); 73 Am. Jur.2d, Statutes, § 2; Black's Law Dictionary, "Supplemental Act", at 1608 (rev. 4th ed. 1968). It is also axiomatic the legislature may be its own lexicographer. See e. g., Knudsen v. Iowa Liquor Control Commission, 171 N.W.2d 538, 540 (Iowa 1969).

The record is at best meager regarding the particular disabilities which entitle a teacher to sick (disability) pay. But we need not close our eyes to the general policy

of school districts throughout this state with regard to compensating a disabled teacher for various causes, both voluntary and involuntary. It cannot be reasonably presumed the school district's program differs in any material respect. See State v. Armstrong, 203 N.W.2d 269, 272 (Iowa 1972); Code § 279.40.

■ Mindful of the foregoing we now hold the denial of sick (disability) pay to pregnant teachers is sexually discriminatory.

### IV. TWO YEAR PROBATIONARY REQUIREMENT (1970 Regulation).

Here to be considered is trial court's holding that the provision of the regulation denying a nontenured teacher maternity leave of absence and imposing employment termination without right to reinstatement is discriminatory.

In this vein defendants contend plaintiffs grant leaves of absence to male teachers without regard to their tenure status but deny equal privilege, particularly pregnancy leave, to female teachers unless tenured. But the record affirmatively discloses nontenured male and female teachers are treated alike with regard to leaves of absence. Therefore defendants failed to carry their burden of proof on the issue at hand. On this assignment we reverse.

### V. BONA FIDE OCCUPATIONAL QUALIFICATIONS (BFOQ) EXCEPTIONS.

■ Next to be determined is whether sexually discriminatory provisions of the regulations are "based upon the nature of the occupation." See § 105A.7(1)(c). Stated otherwise, the issue now before us is whether those provisions heretofore found sexually discriminatory are based upon a reasonable occupation-related foundation.

Plaintiffs claim one purpose for the 1970 mandatory leave provision is to provide for welfare of the mother. The record completely fails, however, to demonstrate a medical need for such an obligatory provision. There is, in fact, evidence which compels a conclusion contrary to that urged by plaintiffs.

Medical witnesses for both plaintiffs and defendants testified a woman entering the last trimester of pregnancy is prone to swelling of the legs, varicose veins and backaches. But there is no medical evidence from which we can conclude these conditions are aggravated by continued teaching. In fact, medical testimony discloses many women are able to work until time of delivery without attendant disability. Plaintiffs' expert witness conceded the vast majority of obstetricians and gynecologists were of the opinion such continued employment in no way adversely affected a woman's welfare. Moreover, plaintiffs' argument encounters even more difficulty in light of its past practices. Illustratively, Mrs. McCarthy, as a substitute, taught physical education classes eleven times throughout her maternity leave at the request of the school district.

We are satisfied the welfare-based argument, advanced by plaintiffs, discriminatorily presumes every pregnant teacher is physically incapable of continuing work after the fifth month of pregnancy. Thus, the regulations sweep too broadly. See Cleveland Board of Education v. LaFleur, 414 U.S. at 643–647, 94 S.Ct. at 798–799. See also Cheatwood v. South Central Bell Telephone & Tel. Co., 303 F.Supp. at 759–760.

A related claim by plaintiffs is to the effect the leave provision finds support in evidence showing teachers lose classroom efficiency beginning about the sixth month of pregnancy. On the contrary, the evidence in this area discloses relatively few teachers lose efficiency in the latter months of pregnancy.

Briefly stated, the bulk of the testimony shows no two pregnancies are alike. We see little rationality in a rigid leave proviso which applies across the board to all pregnancy-related cases. See Cleveland Board of Education v. LaFleur, 414 U.S. at 645–646, 94 S.Ct. at 799.

The brief of Johnston County Community School District, amicus curiae, proposes a third basis in support of the aforesaid 1970 leave provision. It vigorously urges the need to secure instructional continuity and avoid repeated interruptions by teacher replacements during the school year provides a reasonable foundation for the leave policy. While such uninterruptedness is certainly a matter of legitimate concern, we agree with this reasoning in Green v. Waterford Board of Education, 473 F.2d at 635–636:

> "Continuity of instruction is surely an important value. Where a pregnant teacher provides the Board with a date certain for commencement of leave, however, that value is preserved; an arbitrary leave date set at the end of the fifth month is no more calculated to facilitate a planned and orderly transition between the teacher and a substitute than is a date fixed closer to confinement. Indeed, the latter—as was the case here—would afford the Board more, not less, time to procure a satisfactory long-term substitute. There remains, of course, the possibility of premature childbirth or complications in the late stages of pregnancy, eventualities which might upset the best-laid plans of the teacher, the scheduled substitute, and the school board. However, there is nothing to indicate that these would be more than isolated instances. The Board must have substitute teachers generally available to replace any teacher suddenly incapacitated by acute illness or by any number of other causes. Any conclusion that these substitutes could not handle additional pregnancy-related emergencies is pure speculation on this record."

And as stated in Cleveland Board of Education v. LaFleur, 414 U.S. at 642, 94 S.Ct. at 797:

> "Were continuity the only goal, cut-off dates much later during pregnancy would serve as well or better than the challenged rules, providing that ample advance notice requirements were retained.

Indeed, continuity would seem just as well attained if the teacher herself were allowed to choose the date upon which to commence her leave, at least so long as the decision were required to be made and notice given of it well in advance of the date selected.

> "In fact, since the fifth or sixth months of pregnancy will obviously begin at different times in the school year for different teachers * * * rules may serve to hinder attainment of the very continuity objectives that they are purportedly designed to promote."

The above amicus curiae argument is devoid of substance.

We now hold (1) welfare of the mother; (2) classroom efficiency; and (3) instructional continuity do not so reasonably relate to the nature of the occupation (BFOQ) as to justify the leave provision of the instantly involved regulation.

By the same token it is to us evident there is here no rational nexus between the nature of the occupation and any return to work restriction or sick (disability) pay provisions of the 1970 and 1972 regulations.

## VI. WAIVER OF DISCRIMINATORY REGULATION PROVISIONS.

Sometime in 1968 the school district teachers formed a committee known as the Representative Council (Council). It was established, at least in part, for the purpose of recommending to the County Board of Education those policies supported by the teachers. But the county board is not bound by the Council's recommendations. Before adoption of the 1970 regulation it was presented by the Council to the teachers for a vote and by them approved. The Council then forwarded the policy to the county board which subsequently adopted it verbatim.

In light of the foregoing plaintiffs assert Parr and McCarthy waived their right to contest sexually discriminatory provisions of the regulation.

This court is satisfied the rights accorded by Code § 105A.7 against sex discrimination were not effectively relinquished by the Council's action.

In Robinson v. Lorillard Corporation, 444 F.2d 791, 799 (4th Cir. 1971), cert. denied, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971), the court said: "The rights assured by Title VII are not rights which can be bargained away—either by a union, by an employer, or by both acting in concert."

Albeit the Council did not stand in the shoes of a labor union in the strict sense of the word, we see no reason to distinguish, for the purpose of this case, between a representative council and a labor union when both such organizations, regardless of nomenclature, represent and speak for the working people. In this regard Code § 105A.2(4) says:

> " 'Labor organization' means any organization which exists for the purpose in whole or in part of collective bargaining, of dealing with employers concerning grievances, terms, or conditions of employment, or of other mutual aid or protection in connection with employment."

Nor is there any valid distinction in the fact that *Robinson, supra*, involved Title VII rights whereas § 105A.7 rights are here relied upon. Both enactments, in relevant part, prohibit sex discrimination. See also United States v. St. Louis-San Francisco Railway Co., 464 F.2d 301, 309 (8th Cir. 1972), cert. denied, 409 U.S. 1116, 93 S.Ct. 913, 34 L.Ed.2d 700 (1973).

## VII. CONTRACTUAL ESTOPPEL.

 Plaintiffs further contend defendants Parr and McCarthy are estopped from contesting validity of the 1970 regulation because they voluntarily entered into teaching contracts with full knowledge of the above discussed sexually discriminatory provisions contained therein.

But in State ex rel. Turner v. Koscot Interplanetary, Inc., 191 N.W.2d 624, 630 (Iowa 1971), we said:

> "It is well established, laws having for their purpose the legitimate protection of health, safety, morals and welfare of the people are not constitutionally prohibited. And where, as here, state legislation addressed to that end is reasonable and appropriate, all contracts are subject thereto."

See also 17 Am.Jur.2d, Contracts, § 257; 17A C.J.S. Contracts § 330.

Certainly § 105A.7 was enacted for the beneficent purpose of preventing employment-related sex discrimination.

It therefore follows the teaching contracts entered into by Parr and McCarthy could not lawfully differentiate on the basis of sex. In effect, however, that is exactly what they did. To this extent, those contracts are of no force or effect. See Cornick v. Southwest Iowa Broadcasting Co., 252 Iowa 653, 656–657, 107 N.W.2d 920 (1961).

We therefore conclude neither Mrs. Parr nor Mrs. McCarthy is estopped from asserting the illegality of their respective contracts. See City of Tyndall v. Schuurmans, 74 S.D. 566, 56 N.W.2d 693, 698 (1953); 17 Am.Jur.2d, Contracts, § 232; 17 C.J.S. Contracts § 279.

## VIII. INTERVENTION.

 Plaintiffs finally assert trial court erred in holding other teachers similarly aggrieved could intervene *after* date of decree in this declaratory proceeding because: (1) Iowa R.Civ.P. 75 allows intervention only *before* trial and (2) none of these teachers had filed prefatory complaints with the Civil Rights Commission. By virtue of our holding, *infra*, regarding plaintiffs' first contention, we do not reach the question as to whether teachers affected by the 1970 regulation were required to file complaints with the commission as a prequisite to intervention.

In relevant part trial court decreed:

> "*Other past and present staff members of the Plaintiff School District that may*

have rights under this Decree *can seek to join in this action within twenty days from the date of the Decree* and seek a hearing on eligibility and amount of damages and rights that they believe they would have accrued * * * because of the maternity leave policy in effect from 1969 to July 1, 1972, and provided the Statute of Limitations has not run." (emphasis supplied).

Pursuant thereto some teachers did file intervention petitions to which plaintiffs entered written objections.

But Iowa R.Civ.P. 75 provides:

"*Any person interested* in the subject matter of the litigation, or the success of either party to the action, or against both parties, *may intervene at any time before trial begins*, by joining with plaintiff or defendant or claiming adversely to both." (emphasis supplied).

And 1 Anderson, Actions for Declaratory Judgments, § 355 (2d ed. 1951), states in part:

"The fact that the main issues in any case are suited for declaratory relief, cannot in any way affect the rules governing the rights to intervene under the law, and is subject to the limitations imposed thereon. The enactment of the declaratory judgment statute did not alter the provisions of the law with respect to intervention."

See also Wright & Miller, Federal Practice and Procedure: Civil, § 2768 at 850; 26 C.J.S. Declaratory Judgments § 134 at 308.

Absent any showing made upon which to find otherwise this court concludes the allowance of such leave to untimely intervene was improper. See Rick v. Boegel, 205 N.W.2d 713, 717 (Iowa 1973); Morse v. Morse, 247 Iowa 1113, 1123, 77 N.W.2d 622 (1956); First Tr. J. S. L. Bk. v. Cuthbert, 215 Iowa 718, 728–729, 246 N.W. 810 (1933); Drinnon v. Oliver, 24 Cal.App.3d 571, 101 Cal.Rptr. 120, 129 (1972), and citations; Annot., 37 A.L.R.2d 1306, 1340.

Trial court erred in permitting intervention after trial and judgment. On that issue we reverse.

IX. In brief, this court now holds:

(A) The 1970 regulation is sexually discriminatory to the extent

(1) tenured and nontenured female teachers are required to cease employment at the end of the fifth month of pregnancy and cannot return until expiration of a fixed period of time;

(2) sick (disability) pay benefits are impermissibly denied pregnant teachers whose employment has been either temporarily discontinued or terminated.

(B) The 1972 regulation is sexually discriminatory to the extent sick (disability) pay benefits are impermissibly denied pregnant teachers.

(C) Defendants failed to prove a prima facie case of sexual discrimination with regard to the provision of the 1970 regulation denying maternity leave to nontenured female teachers.

(D) Neither Mrs. Parr nor Mrs. McCarthy waived the right to assert invalidity of the 1970 regulation, nor were they estopped from so doing.

(E) Trial court erred in holding other teachers of the Cedar Rapids Community School District could intervene *after* trial and decree in the instant declaratory judgment proceeding.

Affirmed in part, reversed in part.

HARRIS and McCORMICK, JJ., concur.

MOORE, C. J., and LeGRAND, J., concur in result.