**FRANKLIN MANUFACTURING
COMPANY, Appellee,**

v.

**IOWA CIVIL RIGHTS COMMISSION,
Appellant.**

No. 61559.

Supreme Court of Iowa.

Oct. 18, 1978.

Richard C. Turner, Atty. Gen., and Shirley G. Steele, Asst. Atty. Gen., for appellant.

Squires, Sanders & Dempsey, Cleveland, Ohio, and Kathleen A. Reimer, of Rogers, Phillips & Swanger, Des Moines, for appellee.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., and Leon R. Shearer and Patricia A. Shoff, of Thoma, Schoenthal, Davis, Hockenburg & Wine, Des Moines, for American Chain and Cable Co., Inc., amicus curiae.

LeGRAND, Justice.

In this case Kathy John and Vickie Bishop claim they were subjected to discriminatory practices by their employer, Franklin Manufacturing Company (hereafter called Franklin), because of their sex. They were denied disability benefits under Franklin's group insurance plan when they took maternity leaves from their employment. They say this violated § 601A.6, The Code, relating to discriminatory employment practices.

They filed a complaint with the Iowa Civil Rights Commission § 601A.14, The Code. The Commission ruled for the claimants, and Franklin appealed to the district court as authorized by § 601A.15, The Code. The district court entered a decree reversing the Commission. The Commission appealed, and we reverse the district court.

The following issues are raised for determination:

1. Are Iowa courts bound by federal decisions in interpreting its own Civil Rights Act?

2. Did the trial court err in holding that § 601A.12, The Code, exempts Franklin's disability plan from complying with the Iowa Civil Rights Act?

3. Would an interpretation of the Iowa Civil Rights Act to allow the claim of Kathy John and Vickie Bishop be unconstitutional as violative of the Supremacy Clause and the Equal Protection Clause of the Fourteenth Amendment?

4. Does the Labor Management Relations Act as amended, 29 U.S.C. § 151 et seq., preempt the field and preclude the application of Iowa law to

alter Franklin's group insurance program, which is part of a lawful collecting bargaining agreement?

The facts are virtually without dispute. Franklin maintained a Group Insurance Plan for its employees. It purported to cover all non-occupational accidental bodily injury or disease. It provided for weekly disability payments according to a schedule set out in the plan. It specifically excluded payment of benefits for "any period of disability due to pregnancy, or resulting childbirth or miscarriage." Both Mrs. John and Mrs. Bishop took maternity leave in 1973. Mrs. Bishop returned to work after an absence of ten weeks. Mrs. John did not return at all after the birth of her child. Both claimants received medical and hospital benefits under the plan, and it is only the weekly disability payments which were denied them. In finding for the claimants, the Commission ordered Franklin to pay Vickie Bishop $278.57 and Kathy John $228.57.

■ I. One of the grounds relied on by the trial court was that *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) dictates a finding for Franklin. In *Gilbert* the United States Supreme Court held a company insurance plan which excluded disabilities arising out of pregnancy did not constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964. The case was one of statutory interpretation, limited to construing a federal statute. In *Quaker Oats Co. v. Cedar Rapids Human Rights Commission,* 268 N.W.2d 862, 866–67 (Iowa 1978), we said we were not bound by *Gilbert* in construing our own Civil Rights Act, and we declined to follow it.

Our holding in *Quaker Oats* disposes of the argument that *Gilbert* controls the present appeal. We give that matter no further consideration.

II. The second issue is another matter of statutory interpretation concerning the meaning of § 601A.12. The Commission relies heavily upon our opinion in *Cedar Rapids Community School District v. Parr,* 227 N.W.2d 486 (Iowa 1975), but neither that case nor the later *Quaker Oats* decision touches the question raised here.

We set out the statute in full:

"The provisions of this chapter [601A] relating to discrimination because of sex or age shall not be construed to apply to any retirement plan or benefit system of any employer unless such plan or system is a mere subterfuge adopted for the purpose of evading the provisions of this chapter."

It is not claimed Franklin's plan is a "mere subterfuge adopted for the purpose of evading" the Civil Rights Act, and the only question therefore is whether this statute exempts all benefit systems or only those relating to retirement. This is a matter of statutory interpretation which involves a determination of legislative intent. Franklin says we should construe the statute to exempt "any *retirement* plan or [*any*] benefit system." The Commission urges a more limited interpretation and wants us to say the statute exempts only "any *retirement* plan or [*any retirement*] benefit system."

In construing statutes, we observe well established rules. We listed a number of these principles in *Iowa National Industrial Loan Co. v. Iowa State Department of Revenue,* 224 N.W.2d 437, 440 (Iowa 1974), where we said:

"(1) In considering legislative enactments we should avoid strained, impractical or absurd results. *Cedar Memorial Park Cemetery Association v. Personnel Associates, Inc.,* 178 N.W.2d 343, 347 (Iowa 1970); *Olsen v. Jones,* 209 N.W.2d 64, 67 (Iowa 1973); *Northern Natural Gas Company v. Forst,* 205 N.W.2d 692, 695, 696 (Iowa 1973); *State v. McGuire,* 200 N.W.2d 832, 833 (Iowa 1972); *Isaacson v. Iowa State Tax Commission,* 183 N.W.2d 693, 695 (Iowa 1971); *Harnack v. District Court of Woodbury County,* 179 N.W.2d 356, 361 (Iowa 1970); *Krueger v. Fulton,* 169 N.W.2d 875, 877 (Iowa 1969); *Janson v. Fulton,* 162 N.W.2d 438, 443 (Iowa 1968).

"(2) Ordinarily, the usual and ordinary meaning is to be given the language used but the manifest intent of the legislature will prevail over the literal import of the words used. *Northern Natural Gas Co. v. Forst,* supra, 205 N.W.2d at 695.

"(3) Where language is clear and plain, there is no room for construction. *In re Johnson's Estate,* 213 N.W.2d 536, 539 (Iowa 1973); *McKillip v. Zimmerman,* 191 N.W.2d 706, 709 (Iowa 1971); *In re Brauch's Estate v. Beeck,* 181 N.W.2d 132, 134 (Iowa 1970).

"(4) We should look to the object to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. *State v. Johnson,* 216 N.W.2d 335, 337 (Iowa 1974).

"(5) All parts of the enactment should be considered together and undue importance should not be given to any single or isolated portion. *Cedar Memorial Park Cemetery Association v. Personnel Associates, Inc.,* supra; *Webster Realty Company v. City of Fort Dodge,* 174 N.W.2d 413, 418 (Iowa 1970); *Wilson v. Iowa City,* 165 N.W.2d 813, 822 (Iowa 1969); *Goergen v. State Tax Commission,* 165 N.W.2d 782, 785, 786 (Iowa 1969).

"(6) We give weight to the administrative interpretation of statutes, particularly when they are of longstanding. *State v. Garland,* 250 Iowa 1087 (428), 94 N.W.2d 122 (1959); *Northwestern States Portland Cement Co. v. Board of Review of City of Mason City,* 244 Iowa 720, 58 N.W.2d 15 (1953)."

*See also Doe v. Ray,* 251 N.W.2d 496, 504–05 (Iowa 1977); *Iowa v. Buckley,* 232 N.W.2d 266, 270 (Iowa 1975); *Domain Industries, Inc. v. First Security Bank & Trust Co.,* 230 N.W.2d 165, 169 (Iowa 1975). We are mindful, too, of the direction in § 601A.16 that we should construe the Civil Rights Act liberally to effect its purpose.

▮ We conclude the legislative purpose and intent in enacting § 601A.12 was to exempt only those plans or benefit systems relating to retirement. We are con-

vinced any other interpretation would encourage, rather than inhibit, discriminatory policies. That is not what the legislature intended, and we now hold Franklin's Group Insurance Plan is not exempt from the provisions of chapter 601A, The Code.

▮ III. We next consider whether permitting the claims of Mrs. John and Mrs. Bishop would, as Franklin contends, violate the Supremacy Clause and the Equal Protection Clause of the Fourteenth Amendment.

We believe division I, where we held the federal decisions were not binding on us in construing our own Civil Rights Act, answers the Supremacy Clause argument without need of further discussion.

We find no basis for the Equal Protection argument. Franklin cites *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1975) in support of its position. *Geduldig* only held the exclusion of pregnancy claims under a California statute quite dissimilar to ours does not violate the Equal Protection Clause. The following language from *Geduldig* is equally helpful to the Commission in contending the inclusion of pregnancy claims would not violate the Equal Protection provision either:

"There is no evidence in the record that the selection of the risks insured by the program worked to discriminate against any definable group or class in terms of the aggregate risk protection derived by that group or class from the program. There is no risk from which men are protected and women are not. Likewise there is no risk from which women are protected and men are not." (417 U.S. 484, 496, 94 S.Ct. 2485, 2497, 41 L.Ed.2d 264, 265).

A plan which protects men and women equally from disabilities to which each class is separately subject can hardly be said to treat either unequally. That the risks of one class may not be the same as the risks of the other does not raise an Equal Protection problem.

Although not decided on constitutional grounds, *City of Los Angeles v. Manhart,*

435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), discusses this same problem in connection with unequal retirement benefits accruing to male and female workers because women live longer than men. Despite this admitted result, the court said the employer could not demand greater contributions from female workers than from male workers. *Cf. Cedar Rapids Community School District v. Parr*, 227 N.W.2d at 493.

We hold there is no merit in Franklin's Equal Protection argument.

IV. This brings us to the last issue raised: Is this controversy within the field pre-empted by the National Labor Relations Board for the handling of labor disputes?

Franklin's Group Insurance Plan is part of the collective bargaining agreement between Franklin and the representative labor union. Franklin argues the National Labor Relations Board has the exclusive jurisdiction over any dispute arising under the collective bargaining agreement.

■ It is true that in most instances labor disputes arising out of collective bargaining agreements are either exclusively within the jurisdiction of the National Labor Relations Board or, if cognizable in state courts, federal law is to be applied in solving the problems raised. *Teamsters Local Union No. 394 v. Associated Grocers of Iowa Cooperative, Inc.*, 263 N.W.2d 755, 757 (Iowa 1978).

Franklin, of course, would like to have federal law applied because it feels the *Gilbert* case would then require a result favorable to it. The Commission, on the other hand, would naturally prefer that the more favorable interpretations of this court control our decision.

■ One of the exceptions to the pre-emption rule is that issues involving matters of vital state public policy are not pre-empted by the National Labor Relations Act.

In *Lodge 76, International Association of Machinists & Aerospace Workers v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 136, 96 S.Ct. 2548, 2551, 49 L.Ed.2d 396, 401 (1976), the court said: "Federal labor policy as reflected in the National Labor Relations Act, as amended, has been construed not to preclude the states from regulating aspects of labor relations that involve conduct touching interests so deeply rooted in local feeling and responsibility that * * * we could not infer that Congress had deprived the States of the power to act." *See also San Diego Union v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775, 782 (1959).

A number of cases have allowed the state to assert jurisdiction under this doctrine. *See Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Automobile Workers v. Russell*, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); *Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957); *Automobile Workers v. Wisconsin Employment Relations Board*, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162 (1956).

This rationale has been applied under varying circumstances where the alleged pre-emptive effect of the National Labor Relations Act has been rejected. *Farmer v. United Brotherhood of Carpenters*, 430 U.S. at 303–305, 97 S.Ct. at 1065–1066, 51 L.Ed.2d at 352–53 (claim for emotional distress caused by intentional tort); *Linn v. Plant Guard Workers*, 383 U.S. 53, 61, 86 S.Ct. 657, 662, 15 L.Ed.2d 582, 589 (1966) (suit for malicious libel); *DeCanas v. Bica*, 424 U.S. 351, 356–58, 96 S.Ct. 933, 936, 47 L.Ed.2d 43, 49–50 (1976) (hiring illegal aliens); *Simpson v. Providence Washington Insurance Group*, 423 F.Supp. 552, 556 (D.C. Alaska 1976) (discrimination against persons over 65); *Williams v. International Brotherhood of Boilermakers*, 27 Cal.2d 586, 165 P.2d 903 (1946) (discrimination based on race).

■ In the case now before us we hold the state has an overriding interest under the Iowa Civil Rights Act in protecting its citizens against discrimination based on sex. The present controversy is not pre-empted by the National Labor Relations Act.

While we are convinced this disposes of Franklin's preemption argument (including the issue first raised in the amicus curiae brief concerning the Federal Employee Relations Act), we mention one other reason for upholding state jurisdiction. It is the philosophy recently announced in *Bald v. RCA Alascom and Teamsters Local 959* (Alaska 1977), 569 P.2d 1328, 1335, from which we quote:

"The National Labor Relations Act and the state and federal civil rights acts were enacted 30 years apart, each in response to one of the most monumental social crises of the century. They were enacted for different purposes. The NLRA was enacted in 1935 to alleviate industrial strife and improve the lot of workers. 29 U.S.C. § 151. It was substantially amended in 1947 to prevent abuses by unions of the power that the 1935 act had given them. Id. §§ 141, 151. The civil rights laws were passed in an attempt to prevent the use of irrelevant and stigmatizing criteria to bar persons from employment for which they were well qualified. * * *

"We have concluded that there is nothing necessarily inconsistent in these aims, and that the [civil rights] laws Alaska has enacted to promote the latter purpose need not give way to the federal laws enacted for the former purpose. We hold that the National Labor Relations Act does not preempt [Alaska's Civil Rights Act] and does not deprive the courts of this state of jurisdiction to hear the instant case."

*See also Maine Human Rights Commission v. United Paperworkers*, 383 A.2d 369, 379, 380, n. 30 (Me.1978); cf. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 50–51, 94 S.Ct. 1011, 1020, 1021, 39 L.Ed.2d 147, 159 (1974).

We believe this should be our policy, too, in considering matters arising under the Iowa Civil Rights Act. We adopt it as such.

■ We should, perhaps, mention here Franklin's argument that pregnancy-related conditions are not covered because they are neither an injury nor a sickness, the only risks included in the plan. We believe

our decision in *Cedar Rapids Community School v. Parr*, 227 N.W.2d at 494–95 disposes of this argument. Furthermore, as pointed out in *Gilbert*, 429 U.S. at 127, 97 S.Ct. at 404, 50 L.Ed.2d at 350, a significant number of pregnancies lead to complications, either before or after delivery, which would be classified as sickness under any definition. The exclusion of *all* pregnancy-related conditions is thus clearly discriminatory.

■ Franklin also asks us to deny the claims of Mrs. John and Mrs. Bishop because pregnancy is both a "voluntary and desirable" condition. We reject this argument.

While the act of sexual intercourse is voluntary, pregnancy is not necessarily the intended—or desired—result. This is one factor which distinguishes pregnancy from two other "voluntary" conditions to which Franklin refers. In vasectomies, for instance, the result is the very one for which the operation was performed. The same is true of an intestinal by-pass. Such exceptions, which incidentally are not excluded by the terms of the plan, are distinguishable from pregnancy-related disabilities.

Our holding is limited to employer-employee rights under chapter 601A. It does not purport to limit the elimination of pregnancy risks from private insurance plans. *City of Los Angeles v. Manhart*, 435 U.S. at 718, 98 S.Ct. at 1380, 55 L.Ed.2d at 671; *Quaker Oats Co. v. Cedar Rapids Human Rights Commission*, 268 N.W.2d at 865.

V. We have considered all the arguments made on behalf of Franklin, including those advanced in the amicus curiae brief. For the reasons given, the judgment of the district court is reversed and the case is remanded for entry of judgment for the Commission.

REVERSED and REMANDED.

All Justices concur except HARRIS, J., who dissents, and ALLBEE, McGIVERIN, and LARSON, JJ., who take no part.

HARRIS, Justice (dissenting).

In accordance with the views expressed in my dissent in *Quaker Oats Co. v. Cedar Rapids Human Rights Commission,* 268 N.W.2d 862, 868 (Iowa 1978), I respectfully dissent. I would affirm the trial court.