WALKER MANUFACTURING COMPANY, Respondent, v. IN-
DUSTRIAL COMMISSION, Appellant: HOLSINGER and
others, Intervenors.

*April 27—June 3, 1965.*

For the appellant Industrial Commission the cause was argued by *E. Weston Wood* and *John E. Armstrong,* assistant attorneys general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Seyfarth, Shaw, Fairweather & Geraldson* and *Lee C. Shaw, Ray J. Schoonhoven,* and *Rody P. Biggert,* all of Chicago, Illinois, and by *LaFrance, Thompson, Greenquist, Evans & Dye* and *Alfred E. LaFrance* and *Adrian P. Schoone,* all of Racine, and oral argument by *Lee C. Shaw.*

CURRIE, C. J. This appeal presents these two issues:

(1) Whether the commission lacked jurisdiction to act upon the instant complaint made to it against Walker by virtue of federal pre-emption over the field of collective bargaining which affects interstate commerce.

(2) Does the record sustain the commission's determination that Walker violated the age-discrimination prohibition of the Wisconsin Fair Employment Act (secs. 111.31–111.37, Stats.)?

The provisions of the Wisconsin Fair Employment Act which are material to the consideration of both issues are as follows:

Sec. 111.32. "DEFINITIONS. When used in this subchapter: . . .

"(5) (b) It is discrimination because of age:

"1. For an employer, . . . because an individual is between the ages of 40 and 65, . . . to terminate from employment such individual, or to discriminate against such individual in promotion, compensation or in terms, conditions or privileges of employment; . . .

"(c) Nothing in this subsection shall be construed to prevent termination of the employment of any person physi-

cally or otherwise unable to perform his duties, nor to affect any retirement policy or system of any employer where such policy or system is not a subterfuge to evade the purposes of this subsection, . . ."

Sec. 111.36. "COMMISSION POWERS. (1) The commission may receive and investigate complaints charging discrimination or discriminatory practices in particular cases, and give publicity to its findings with respect thereto."

*Federal Pre-emption Issue.*

Walker's position with respect to the issue of federal pre-emption is: (1) The application of the age-discrimination prohibitions of the Wisconsin Fair Employment Act to the instant situation would infringe on a subject which Congress has provided should be left to free collective bargaining between Walker and the Union. (2) In any event, Walker's acts in retiring employees because of reaching age sixty is arguably an unfair labor practice of secs. 8 (a) (1) and (3), and 8 (b) (1) (A) and (2) of the National Labor Relations Act, as amended by sec. 101 of the Labor Management Relations Act (Taft-Hartley Act), 29 USCA, sec. 158.

Because Walker is engaged in interstate commerce it is subject to the provisions of the Labor Management Relations Act. The stated policy of the act is to encourage the practice and procedure of collective bargaining. Sec. 1 of the National Labor Relations Act, as amended by sec. 101 of the Labor Management Relations Act (29 USCA, sec. 151), states this policy in part as follows:

"It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce . . . *by encouraging the practice and procedure of collective bargaining* and by protecting the exercise of workers of full freedom of association, self-organization, and designation of representatives of their own choosing, *for the purpose of negotiating the terms and*

*conditions of their employment or other mutual aid or protection."* (Italics supplied.)

Sec. 7 of the National Labor Relations Act, as amended by sec. 101 of the Labor Management Relations Act (29 USCA, sec. 157) guarantees to employees the right to bargain collectively and states in part as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, *to bargain collectively through representatives of their own choosing,* and to engage in other concerted activities for the purpose of collective bargaining. . . ." (Italics supplied.)

Other provisions of the act implement and augment the above rights. The refusal by either an employer or a bargaining agent to bargain collectively is an unfair labor practice (secs. 8 (a) (5) and 8 (b) (3) of the act, 29 USCA, sec. 158). It has been long established that pension and retirement plans are a mandatory subject of bargaining about which the company could not refuse to bargain, if so requested. *Inland Steel Co. v. N. L. R. B.* (7th Cir. 1948), 170 Fed. (2d) 247, certiorari denied (1949), 336 U. S. 960, 69 Sup. Ct. 887, 93 L. Ed. 1112.

Here Walker and the Union by collective bargaining did agree upon a pension plan which gave Walker the option of retiring employees between ages sixty and sixty-five by paying them retirement benefits which were greater than payable to employees who retired at or after age sixty-five. In fact, the benefits payable to an employee who is retired at the option of Walker between ages sixty and sixty-five are double those who voluntarily retire after age sixty.

However, the mere fact that a matter may be a permissive or mandatory subject of collective bargaining does not preclude all exercise by a state of its police power with respect thereto. This is made clear by the following state-

ment made in *San Diego Unions v. Garmon* (1959), 359 U. S. 236, 243, 79 Sup. Ct. 773, 3 L. Ed. (2d) 775:

"However, due regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act."

We deem that the principles to be considered in determining whether or not the age-discrimination prohibitions of the Wisconsin Fair Employment Act are of "merely peripheral concern of the Labor Management Relations Act" are to be found in the cases of *Teamsters Union v. Oliver* (1959), 358 U. S. 283, 79 Sup. Ct. 297, 3 L. Ed. (2d) 312, and *Colorado Comm. v. Continental* (1963), 372 U. S. 714, 83 Sup. Ct. 1022, 10 L. Ed. (2d) 84.

The *Oliver Case* was concerned with whether federal pre-emption excluded application of Ohio's antitrust statute to the provisions of a collective-bargaining agreement entered into between the teamsters union and motor carriers engaged in interstate commerce in twelve midwestern states. The Ohio statute made it illegal for two or more persons to enter agreements to keep the price of transportation at a fixed or graduated figure. An article of the collective-bargaining agreement stated that the lessor-driver of any motor vehicle leased to a covered employer is the employee of the latter; required that such lessor receive separate checks for his wages and for equipment rental; fixed the wages of such a lessor-driver at the rate payable to drivers similarly circumstanced who drive carrier-owned vehicles; and regulated the minimum rental and certain other terms of lease when a motor vehicle is leased to a carrier by an owner who drives his vehicle in the carrier's service. The court found that the objective of these provisions of the agreement was to protect the negotiated wage scale against

possible undermining through diminution of the lessor-owner's wages for driving which might result from a rental which did not cover operating costs plus the agreed wage scale. In holding that there was federal pre-emption the court stated at (pp. 295–297):

"The purposes of the [Wagner and Taft-Hartley] Acts are served by bringing the parties together and establishing conditions under which they are to work out their agreement themselves. To allow the application of the Ohio antitrust law here would wholly defeat the full realization of the congressional purpose. The application would frustrate the parties' solution of a problem which Congress has required them to negotiate in good faith toward solving, and in the solution of which it imposed no limitations relevant here. . . .

"We have not here a case of a collective bargaining agreement in conflict with a local health or safety regulation; the conflict here is between the federally sanctioned agreement and state policy which seeks specifically to adjust relationships in the world of commerce. If there is to be this sort of limitation on the arrangements that unions and employers may make with regard to these subjects, pursuant to the collective bargaining provisions of the Wagner and Taft-Hartley Acts, it is for Congress, not the States, to provide it."

In *Colorado Comm. v. Continental, supra,* the Colorado Anti-Discrimination Commission by order attempted to enforce the Colorado Anti-Discrimination Act against Continental Air Lines after finding that a Negro applicant for the position of pilot had been rejected because of race. On review a state trial court set aside the commission's determination on the grounds: (1) That the state act placed an undue burden upon interstate commerce; and (2) the field of law concerning racial discrimination in the interstate operation of carriers is pre-empted by the federal Railway Labor Act, the Civil Aeronautics Act of 1938, and Federal Executive Orders. The Colorado supreme court discussed

only the question of whether the state act as applied placed an undue burden upon commerce, concluded that it did, and affirmed the trial court. The United States supreme court reversed and in its opinion considered all the grounds upon which the judgment of the trial court rested. It assumed that the Civil Aeronautics Act of 1938, now the Federal Aviation Act of 1958, as well as the state act, protects job applicants from discrimination because of race. With respect to this aspect of the case the court declared at (p. 722) :

"To hold that a state statute identical in purpose with a federal statute is invalid under the Supremacy Clause, we must be able to conclude that the purpose of the federal statute would to some extent be frustrated by the state statute. We can reach no such conclusion here."

While both the *Oliver* and *Continental Cases* deal with different phases of the federal pre-emption problem, both cases lay down the same test for resolving the issue. This test is whether enforcement of the state act would frustrate the objectives of the particular federal act which allegedly has pre-empted the field. We conclude the age-discrimination prohibitions of the Wisconsin Fair Employment Act, as hereinafter interpreted by this court, and, as applicable to the instant pension agreement between Walker and the Union, in no way frustrate the objectives of the Labor Management Relations Act.

The objective of the prohibition of the Wisconsin Fair Employment Act against termination of employment because of age between ages forty and sixty-five obviously is to prevent such employees being thrown out of employment at an age when other employers are unlikely to employ them. The state has a legitimate interest to exercise its police power in the promotion of the general welfare to protect employees of this upper age group against the possibility of being out of employment with resulting

deprivations to their families. Furthermore, the act provides for two exceptions to the prohibition: (1) Where the employee is physically or otherwise unable to perform his duties; and (2) where the termination is pursuant to a retirement policy or system that is not a subterfuge to evade the prohibition. As hereinafter determined, payment of substantial retirement benefits to an employee of this age group whose employment is terminated pursuant to a *bona fide* pension plan falls within the latter exception.

Congress has not seen fit to legislate in this field of age discrimination in employment affecting interstate commerce so there can be no conflict between state and federal enforcement agencies. It is difficult to perceive how the objectives of the Labor Management Relations Act would be thwarted by enforcement of the prohibition contained in the state act. What legitimate purpose would be served by permitting employers and unions to negotiate collective-bargaining contracts that would permit the employer to terminate the employment of employees between ages forty and sixty-five solely because of age without paying substantial retirement benefits? We conclude that the limited nature of the age-discrimination prohibition of this state act is of "merely peripheral concern of the Labor Management Relations Act," to borrow the aforequoted language of *San Diego Unions v. Garmon, supra.*

We now turn to the argument advanced by Walker that its acts, in terminating the employment of the 38 employee-intervenors between ages sixty and sixty-five pursuant to the pension agreement negotiated with the Union, is arguably an unfair labor practice under secs. 8 (a) (1) and (3), and 8 (b) (1) (A) and (2) of the act (29 USCA, sec. 158).

Walker grounds this contention upon *Miranda Fuel Co., Inc.* (1962), 140 NLRB.181, and the subsequent National Labor Relations Board decisions which have relied thereon:

*Hughes Tool Co.* (1964), 147 NLRB, No. 166, and *Maremont Corp.* (1964), 149 NLRB, No. 48. These decisions determine that sec. 7 of the act (29 USCA, sec. 157), protects employees from unfair, irrelevant, or invidious treatment by their exclusive bargaining agent. They further hold that when a union does this it has violated its duty of fair representation and this constitutes an unfair labor practice under some of the subdivisions of sec. 8 of the act. An employer who accedes to the union's demand so as to inflict such unfair or invidious treatment upon one or more employees is also guilty of an unfair labor practice.[1]

We deem the holding in these three board decisions relied upon by Walker are readily distinguishable from the facts of the instant case. The Union here did not engage in any unfair or invidious discrimination toward the Walker employees between sixty and sixty-five years of age when it agreed that Walker should have the option to terminate their employment in return for agreeing to pay substantial retirement benefits to these employees. We conclude that Walker's contention that its acts in the instant case arguably constituted an unfair labor practice under the federal act is too tenuous to support such a conclusion on our part.

After careful consideration of all the arguments advanced by Walker we determine that there existed no federal pre-

[1] The United States supreme court held in *Teamsters Local v. Labor Board* (1961), 365 U. S. 667, 674, 81 Sup. Ct. 835, 6 L. Ed. (2d) 11, that the Labor Management Relations Act only deals with discrimination that encourages or discourages union membership. Furthermore, the opinion of the United States court of appeals in *National Labor Relations Board v. Miranda Fuel Co., Inc.* (2d Cir. 1963), 326 Fed. (2d) 172, wherein it refused to enforce the board's order in *Miranda Fuel Co., Inc., supra,* expresses serious doubt whether any sort of discrimination against an employee, which affects the terms and conditions of his employment, can constitute unfair labor practice under sec. 8 of the act, where wholly unrelated to any union considerations.

emption which prevented the commission from entertaining and determining the instant complaint.

### Did Walker Violate Wisconsin Fair Employment Act?

The age-discrimination prohibition of the Wisconsin Fair Employment Act is subject to the exception contained in par. (c) of sec. 111.32 (5), Stats., which provides, "Nothing in this subsection shall be construed . . . to affect any retirement policy or system of any employer where such policy or system is not a subterfuge to evade the purposes of this subsection, . . ."

Sixteen states in addition to Wisconsin and also the Commonwealth of Puerto Rico have statutes which prohibit age discrimination in employment.[2] Three of these states, Nebraska, New York, and Washington have provisos worded identical or similar to par. (c) of sec. 111.32 (5). The statutes of seven states contain provisos which provide that such statutes do not apply to *"bona fide"* retirement or pension plans. These seven states are California, Connecticut, Delaware, Hawaii, Massachusetts, New Jersey, and Pennsylvania. We are satisfied that there is no essential difference between an age-discrimination statute proviso phrased in terms of retirement policies or systems that are not a subterfuge, such as contained in par. (c) of sec. 111.32 (5) and the corresponding provisions of age-discrimination statutes which speak in terms of *"bona fide"* retirement or pension plans.

The 38 employees affected by the commission's order here under review were retired by Walker pursuant to an option in Walker's pension agreement. This pension agreement

---

[2] See Fact Sheet No. 6-C issued August, 1964, by United States Department of Labor, Bureau of Labor Standards. This document is the source authority relied upon for the further analysis of the provisions of these statutes appearing in this paragraph of the opinion.

had been arrived at by collective bargaining between the Union and Walker. There is no claim made that these negotiations were collusive or that the Union in agreeing to the pension plan breached its duty of fair representation. There can be no doubt that these 38 employees were retired by Walker pursuant to a "retirement policy or system" within the meaning of the statutory exception. Thus the crucial question is whether the commission's finding, that Walker's act in so doing "constituted a subterfuge to evade the purposes of Subsection 111.32 (5) of the statutes" can be sustained.

The evidence with respect to this issue is undisputed. Unless this evidence is subject to conflicting reasonable inferences a question of law is presented and the commission's finding is not binding upon the reviewing court. *Cmelak v. Industrial Comm.*, ante, p. 552, 135 N. W. (2d) 304; *Horvath v. Industrial Comm.* (1965), 26 Wis. (2d) 253, 131 N. W. (2d) 876; *Van Roy v. Industrial Comm.* (1958), 5 Wis. (2d) 416, 92 N. W. (2d) 818. We determine that the evidence in the instant case will support but one reasonable inference and that is that Walker's retirement of these employees pursuant to the option provided for in the pension plan did not constitute a subterfuge to evade the statute.

The commission, in its Findings 18 and 19, stresses the facts that under the pension plan it was voluntary and not compulsory for Walker to retire these employees. We deem this to be immaterial if the option feature of the pension plan is not itself a subterfuge. The test is not whether the exercise of the option is a subterfuge but rather whether the option provision of the pension agreement is such that to permit its exercise would constitute a subterfuge.

The commission, in its Finding 14, finds that Walker did not take any steps to ascertain the physical health of each of these employees or his qualifications to perform his

assigned job. This also is immaterial on the issue of subterfuge where the retirement of these employees was grounded on the option provision of a pension agreement. Par. (c) of sec. 111.32 (5), Stats., contains two exceptions to the age-discrimination prohibition of the subsection. In addition to the one relating to a "retirement policy or system" there is the other exception which excludes termination of the employment of an employee "physically or otherwise unable to perform his duties" from operation of the prohibition. Thus the exception relating to a retirement policy or system would be surplusage if its application were limited to terminations where health prevented full performance of job duties. It seems obvious that the legislature did not intend to restrict the retirement policy or system exception to a situation where the employee is physically unable to perform his duties.

What evidence would be necessary to enable the commission to find that the option of the instant pension agreement, which is confined to employees between the ages of sixty and sixty-five years, was a subterfuge to evade the age-discrimination prohibition of the act? Sec. 111.31, Stats., of the Wisconsin Fair Employment Act declares that it is the policy of this state to make unlawful conduct which ". . . tends to deprive the victims of the earnings which are necessary to maintain a just and decent standard of living, thereby committing grave injury to them." We conclude that evidence sufficient to sustain a finding of subterfuge would have to establish either that the retirement benefits payable to the retired employee were unsubstantial, or, if substantial, that continued payment thereof was likely to be jeopardized.

The instant pension agreement provides retirement benefits payable until age sixty-five of $5.60 per month for each year of service to each employee retired under the option at the election of Walker. For example, the monthly retire-

ment benefit payable to an employee so retired who had twenty years of service would be $112. Of the 38 affected employees so retired only one had as little as ten and a fraction years of service; two had thirteen and a fraction years of service each; and the other 35 all had nineteen or more years of service. An exhibit received in evidence disclosed that these 38 employees will receive an average of $302.52 of benefits per month until they reach sixty-five. Included in this computation in addition to the benefits payable under the pension plan are social-security payments to each employee and his wife payable commencing at age sixty-two; unemployment compensation; vacation pay payable at time of termination of employment, and hospital insurance premiums payable by Walker. The attorney general's brief points out that under the foregoing computation the employee and his wife are required to sacrifice 20 percent of their social-security monthly benefits by electing to commence benefits at age sixty-two instead of sixty-five. However, this feature is offset by the Walker pension benefits payable for life beyond age sixty-five which are not required under the Wisconsin Fair Employment Act. Furthermore, the monthly retirement benefits payable until age sixty-five are the same as those provided in the pension agreement negotiated between this same International Union and General Motors Corporation.

We have no hesitancy in concluding that the monthly retirement benefits payable under the pension agreement to these 38 employees until they arrive at age sixty-five are not of such unsubstantial amount as would support a finding of subterfuge.

No claim has been advanced by the attorney general that the funding requirements of the pension agreement are inadequate to provide the specified retirement benefits. It, therefore, is unnecessary to consider this feature of the pension agreement as providing the basis for a finding of

subterfuge. The pension plan has been approved by the United States internal revenue service as meeting the requirements of its rules and regulations. This indicates that the funding requirements of the plan have met its approval.

We thus reach the conclusion that the commission's finding of subterfuge was an erroneous legal conclusion on its part, and that the judgment of the circuit court which reversed the commission's order must be affirmed.

*By the Court.*—Judgment affirmed.