James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, a Corporation, Defendant.

No. 4–70–Civ. 28.

United States District Court, D. Minnesota, Fourth Division.

July 1, 1971.

Herman Grant, Regional Atty., U. S. Dept. of Labor, Chicago, Ill., for plaintiff.

Peter Weiss, Wright, West, Diessner & Arnason, Minneapolis, Minn., for defendant.

## MEMORANDUM

LARSON, District Judge.

The Secretary of Labor instituted this action pursuant to § 7(b) of the Age Discrimination in Employment Act of 1967 (hereinafter Act), 29 U.S.C. 621 et seq. The Secretary alleges violations of § 4(a) of the Act and seeks injunctive relief enjoining and restraining the defendant from any future violations.

The Act, insofar as relevant, provides:

*"Prohibition of Age Discrimination*

"Sec. 4. (a) It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

\* \* \* \* \* \*

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

\* \* \* \* \* \*

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this

Act, except that no such employee benefit plan shall excuse the failure to hire any individual;

\* \* \*"

"Sec. 12. The prohibitions in this Act shall be limited to individuals who are at least forty years of age but less than sixty-five years of age."

The defendant American Hardware Mutual Insurance Company (hereafter American) established in 1930 a retirement benefit plan known as the Provident Plan (hereafter Plan). The Plan provides for compulsory retirement of all male Plan members at age sixty-five and of female Plan members at age sixty-two. American has the same respective mandatory retirement ages for all male and female employees who are not Plan members. The Secretary contends that this policy is proscribed by the provisions of the Act reproduced above.

As of December 31, 1968, four hundred fourteen of American's eight hundred twenty employees were eligible to participate in the Plan. Of those employees so eligible, all but thirty elected participation. The complainant, Mrs. Sophia Witsoe, is one of those thirty. Mrs. Witsoe would have been retired, pursuant to the American retirement policy, upon becoming sixty-two if the Secretary of Labor had not initiated this action.

The parties agree that the Plan is a bona fide employee benefit plan within the meaning of § 4(b) of the Act. Hence the sixty-two year retirement age for Plan members falls within the exception therein. The Secretary does maintain, however, that the compulsory retirement age of sixty-two for female employees who are not Plan members is proscribed by §§ 4(a) (1) and (2). Defendant argues that the statute is inapplicable on the instant facts. First of all, American claims that the primary intent of Congress was to insure that older workers receive consideration based on training and ability when applying for employment, without regard to arbitrary age limits. Its second contention is that the Secretary's interpretation of the Act is arbitrary and discriminatory because it confers the benefits of the Act on the basis of an arbitrary classification based on participation and nonparticipation. Furthermore, the classification into which each employee falls is the result of an election made before the benefits of the Act were in existence. Thirdly, American contends that even if the relief the Secretary requests is granted prospectively and applies only to an election by an employee occurring after the effective date of the Act, June 12, 1968, and hence a conscious election between the Plan or the benefits of the Act, it will not alleviate the discriminatory nature of the Secretary's interpretation. This is because the distinction between participants and nonparticipants is itself arbitrary and unreasonable.

Finally, American makes the argument that § 401(a) of the Internal Revenue Code of 1954 (hereinafter Code) and the Act deal with the same subject matter and are therefore *in pari materia* and necessarily construed together. Defendant claims that an interpretation of the Act such as that put forth by the Secretary would result in the Plan, an otherwise legal employee benefit plan, becoming illegal under the applicable provisions of § 401(c) of the Code.

The defendant's arguments are resourceful. However, they ignore the basic purpose and the clear language of the statute. Section 4(a) (1) of the Act clearly states that:

"It shall be unlawful for an employer — \* \* \* to discharge any individual \* \* \* because of such individual's age."

This is, of course, provided that the individual is between forty and sixty-five years of age—the operative range of the Act pursuant to § 12. It is conceded by this Court that the legislative history of the Act is primarily directed toward hiring, not discharge, practices. There is, nevertheless, significant legislative history dealing with discharge due to age.

For instance, the House Report, 90th Congress, 1st Session No. 805, at page 2, cites the President's Older American Message of January 23, 1967, in which he recommended the Act.

"Hundreds of thousands, not yet old, not yet voluntarily retired, find themselves jobless because of arbitrary age discrimination."

Obviously premature discharge due to compulsory retirement rules is as relevant to the concern expressed above as the reluctance to hire older workers. Eleven Representatives filed supplemental views to the Report, in which they urged a special provision to encompass age discrimination among Airlines stewardesses who are customarily compelled to resign at an age younger than forty. In this regard the supplemental view said:

"Most age discrimination, in the sense in which this bill treats it, is found within these age limits, [40 to 65] to be sure. And for most purposes, the 40-to-65 age limit is a useful and workable one. But special cases require special treatment * * * and the airline stewardess case is very much a special case." (Page 2 of the supplemental views.)

It is clear that the foregoing assumed that the Act dealt with discharge within the forty to sixty-five range but felt that additional provisions were needed for some occupations where involuntary retirement is made, without regard to job skills, but the typical retirement age is less than forty.

The prohibitions contained in § 4(a) of the Act against both discharge and refusal to hire based solely on arbitrary age limits clearly complement each other. If fewer older workers are arbitrarily retired before age sixty-five, fewer will be compelled to seek jobs. Obviously eliminating discriminatory hiring practices will make the task of finding a new job easier for older workers. However, Congress has in the language of § 4(a) of the Act made it clear beyond doubt that the Act applies to discharge as well as hiring practices. It would be judicial irresponsibility for this Court to delete that language by judicial construction.

Defendant points to § 4(f) of the Act as providing an exception to § 4(a), which is applicable on the instant facts. It then argues that it would be unreasonable to discriminate between members or nonmembers of the Plan. This argument ignores the character of § 4(f). It is indeed an exception to the operation of § 4(a). Retirement at age sixty-two for Plan members is permitted only because it is pursuant to the Plan. The retirement ages are determined actuarially and are part or parcel of the Plan. The defendant employer retires female Plan members at age sixty-two because it is compelled to do so under the terms of the Plan. However, retirement of nonmembers is not done because the Plan compels it but because the employer desires to do so. American probably has many sound business reasons for doing so—encouraging Plan membership, Plan member morale, etc.—but § 4(a) of the Act is a clear Congressional determination that the overall economic interests of the country, as served through older worker employment, override such parochial interests of employers.

Section 9 of the Act authorizes the Secretary to promulgate "rules and regulations as he may consider necessary or appropriate" in order to promote the purposes of the Act. Pursuant to this authorization the Secretary has issued an interpretive bulletin which construes § 4(f) (2) as follows:

"This exception does not apply to the involuntary retirement before 65 of employees who are not participants in the employer's retirement or pension program."

This Court must give weight to an interpretation by the administrative agency entrusted with enforcement of the Act. The agency has expertise in these matters which this Court cannot hope to acquire and furthermore the agency is

statutorily charged with the obligation to issue such rules.

■ The validity of the Secretary's argument becomes apparent when one recognizes that conceptually there is no difference between a mandatory retirement age of sixty-two and a refusal to hire anyone who is sixty-two years old. This is particularly significant in light of the language in § 4(f). Although it permits an employer to observe the terms of a bona fide retirement program, the last clause of § 4(f) (2)—"except that no such employee benefit plan shall excuse the failure to hire any individual"—does not permit the employer to refuse to hire someone because of the terms of such a program. Thus an employer may discriminate according to age by refusing to permit an employee over the maximum entry age—fifty-five years for women in the instant case—to enroll in the Plan or by retiring a person who is a Plan member prior to age sixty-five. However, § 4(f) (2) seems to clearly prohibit a refusal by defendant to hire a sixty-three year old woman based on the Plan's compulsory retirement age or a refusal to hire a fifty-six year old woman because she would be unable to participate in the Plan. The legislative history indicates that the latter situation is the one which Congress was most concerned about. A requirement that newly hired older workers be entitled to the same retirement benefit provisions as younger ones would make the cost of funding such retirement plans prohibitive and discourage employers from adopting them. However, it is germane that the language of § 4(f) (2) clearly encompasses the former circumstances and that the employer interests which the Act overrides are substantially the same in both cases.

■ Finally, a few brief comments should be made concerning defendant's claim that the Internal Revenue Code of 1954 and the Age Discrimination in Employment Act of 1967 are *in pari materia* and hence must be construed together First, it must be pointed out that the purposes of the two Acts are totally unrelated. The Code is designed to raise revenue and § 401(a) in particular is concerned with the expensing by employers of their contributions to the Plan. To the contrary, the Act is designed to promote the employment of older workers. Thus although both the Code and the Act have provisions dealing with employee retirement plans, the scope, direction and reasons for the provisions are almost wholly unrelated.

The second matter of concern to the defendant is the possibility that the Secretary's interpretation will render unlawful an otherwise legitimate employee benefit retirement plan. Defendant points out that the I.R.C. Regs. § 1.401–4(a) provide that if the age of retirement under an annuity or pension plan is less than sixty-five, it must comport with the age at which employees customarily retire in the company or industry and cannot be a device to accelerate funding. The purpose of the regulation is to prevent employers from using a very low retirement age to increase the annual tax deduction for the employer's contribution to a retirement plan. Possibly if defendant permitted female Plan members to retire at sixty-five while claiming deductions on the basis of a retirement age of sixty-two, there would be a violation of the Code. However, it does not appear that a requirement pursuant to Federal law which compels permitting female nonparticipants to work until age sixty-five should have any effect on the exempt status of the Plan.

In light of the foregoing, judgment must be rendered for the plaintiff Secretary.