**LORAS COLLEGE, Appellee,**

v.

**IOWA CIVIL RIGHTS COMMISSION,
Appellant.**

No. 62323.

Supreme Court of Iowa.

Nov. 14, 1979.

Thomas J. Miller, Atty. Gen., and Raymond D. Perry, Asst. Atty. Gen., for appellant.

Robert M. Bertsch and Michael J. Melloy, of O'Connor, Thomas, Hammer, Bertsch & Norby, Dubuque, for appellee.

McGIVERIN, Justice.

The controlling question here is whether an employer's retirement plan is subject to the Iowa Civil Rights Act, Chapter 601A, The Code 1973, in particular the age discrimination provisions of section 601A.7 (1)(a), when a sixty-five-year old employee, who chose not to participate in the financial benefit portion of the plan, is terminated pursuant to the plan.[1] The Iowa Civil Rights Commission found discrimination. On judicial review, the district court reversed the Commission. We affirm the district court.

Petitioner Loras College, the employer, is a private co-educational liberal arts institution located in Dubuque. It is funded, sponsored and partially sustained by the Roman Catholic Archdiocese of Dubuque. The college employs as faculty both priests and lay persons.

Respondent Iowa Civil Rights Commission is a state agency established under Chapter 601A, to, *inter alia*, "receive, investigate, and pass upon the merits of complaints alleging unfair or discriminatory practices." § 601A.5(2), The Code 1973.

Upon the complaint properly filed with the Commission by Dr. Edward J. Schuster, the employee, the Commission found that Loras discriminated against him because of his age in ending his employment as a teacher.

*I. Background and proceedings.* Dr. Schuster, a layman, was born March 25, 1908. He joined the Loras faculty in 1956 as an associate professor of modern foreign languages. He later was awarded tenured status as a full professor, teaching Spanish and German. Under Loras' policy, tenure ends at age sixty-five. This allows for the hiring of younger teachers, for the constant and methodical regeneration of a qualified faculty, for the incorporation of new ideas and theories of education, and for maintaining the quality of education at Loras. *See DeShon v. Bettendorf Community School District,* 284 N.W.2d 329, 333 (Iowa 1979). Dr. Schuster became sixty-five during the 1972–73 academic year. He taught until May 13, 1973, when he was retired by Loras on the basis of his age.

Effective September 1, 1960, Loras had established a comprehensive retirement plan for lay persons, who were faculty members, administrative personnel and key supervisory maintenance employees. The plan included a document entitled "Retirement Plan" (hereinafter referred to as "benefit program"), in which the policy of retiring all benefit participants at the normal retirement age of sixty-five was set forth. Under the terms of the benefit program each participant in the program would contribute five percent of his basic salary through payroll deductions by Loras. The college would add equal amounts as its contribution and apply the combined sum to the purchase of retirement benefits for the employee. The benefit program was voluntary for such covered employees then serving and was compulsory for future employees in the covered categories.

As part of the retirement plan, Loras and its faculty established a policy that lay faculty members were to retire at the end of the academic year in which they attain the age of sixty-five. The policy was set forth

---

1. The Code sections relevant to our discussion of this issue are sections 601A.7(1)(a) and .15, The Code 1973.

Section 601A.7 provides:
1. It shall be an unfair or discriminatory practice for any:
a. *Person* to refuse to hire, accept, register, classify or refer for employment, *to discharge any employee,* or to otherwise discriminate in employment against any applicant for employment or any employee *because of the age,* race, creed, color, sex, national origin, religion or disability *of such*

applicant or *employee,* unless based upon the nature of the occupation. . . .
(Emphasis added).
Section 601A.15 provides:
The provisions of this chapter relating to discrimination because of sex or *age shall not be construed to apply to any retirement plan or benefit system* of any employer unless such plan or system is a mere subterfuge adopted for the purpose of evading the provisions of this chapter.
(Emphasis added).

in the document on Contractual Relations and Status of Faculty Members, as well as being an integral part of the document entitled "Retirement Plan" or benefit program. Dr. Schuster knew of the retirement policy and the benefit program Loras had established.

Although he clearly had the opportunity to participate in the benefit program of the retirement plan, Dr. Schuster chose not to participate. Therefore, the five percent employee contributions were not deducted from his salary from 1960 until his retirement in 1973.

The last signed contract between Loras and Dr. Schuster only provided employment for him for the 1972–73 academic year, in accordance with college policy and pursuant to the overall retirement plan.

The Commission found as a fact that the Loras benefit program as it was applied to its participants was not a subterfuge to evade the operation of the Iowa Civil Rights Act. § 601A.15, The Code 1973.

Loras suffered a significant decline in overall student enrollment commencing in 1971. The college also adopted a new curriculum, which went into effect in the fall of 1971, through which the graduation requirement of fourteen semester hours of foreign language was eliminated. These events led to a severe decline in the number of students taking language courses, with the resultant decrease in the need for faculty members teaching in the modern foreign language department.

A teacher in the foreign language department was expected to teach 270 student credit hours per year prior to 1972. In the fall of 1972 the number of teaching hours for each faculty member had fallen to seventy-five per year. Additionally, Loras had suffered significant financial losses during the five-year period from 1968 to 1972.

In 1972 and 1973 Loras found it necessary that the number of faculty be reduced in the department of modern foreign languages, and in 1973 the necessary reductions were determined to be mandatory.

The department was to be reduced from five to three teachers. The question as to who should be terminated had to be answered.

Recognizing the retirement policy of Loras, Dr. Schuster, on December 9, 1972, applied in writing to the Faculty Council for an extension of his service beyond the retirement age of sixty-five.

The Faculty Senate and Faculty Council at Loras studied the matter of faculty staffing and made general recommendations to the president of Loras. All faculty members in the department of modern foreign languages were considered before the president of Loras made his decision to apply the retirement plan's policy of retirement to Dr. Schuster and thereby denied his request for an extension of service. In addition to Dr. Schuster, another faculty member, Dr. Prendergast, was also retired in 1973 in accordance with the same retirement plan. No teaching faculty members have been added to the department since the retirement of Drs. Schuster and Prendergast.

After his termination, Dr. Schuster sought comparable teaching positions. He was unable to find such employment for the 1973–74 school year. He did obtain a position at Northern Arizona University (NAU) for 1974–75, but at a lower salary. He remained with NAU until the end of the 1976–77 academic year, at which time he refused a similar appointment for the next year.

On August 1, 1973, Dr. Schuster filed a complaint with the Civil Rights Commission, charging age discrimination against him by Loras. On April 13, 1978, after an evidentiary hearing before a hearing officer, the Commission found in favor of Dr. Schuster, ordered Loras to reinstate him and awarded certain monetary damages.

Loras petitioned for judicial review in district court under section 17A.19, The Code 1977.[2] The court ruled, among other

---

2. Because the parties followed chapter 17A, The Code 1977, for judicial review in district court of the Commission's decision, our review of that judgment is under section 17A.20.

things, that section 601A.15, The Code 1973, exempted Loras from the provisions of the Iowa Civil Rights Act, and the discrimination complaint was dismissed. The Commission appealed under section 17A.20, The Code 1977.

Because we find section 601A.15, The Code 1973, dispositive of this appeal, we discuss only the effect of that statute under this record and do not consider the other issues raised by Loras and the Commission.

Unless otherwise stated, all later references will be to the 1973 Code, which was in effect when the alleged discrimination occurred.

In view of the manner in which the parties proceeded on judicial review, this was a contested case before the Commission within the meaning of section 17A.2(2), The Code 1977. Our review under section 17A.20 is not de novo. We "review the record in the manner specified in § 17A.19(7) and make anew the judicial determinations specified in § 17A.19(8)." *Hoffman v. Iowa Department of Transportation,* 257 N.W.2d 22, 25 (Iowa 1977); *see Jackson County Public Hospital v. Public Employment Relations Board,* 280 N.W. 426, 429 (Iowa 1979) (quoting *Hoffman* ). "Our review is limited, as the district court's review should have been, to the record made before the hearing officer." *Davenport Community School District v. Iowa Civil Rights Commission,* 277 N.W.2d 907, 909 (Iowa 1979); *Hoffman,* 257 N.W.2d at 25.

II. *Exception of the Loras retirement plan from Chapter 601A.*

A. *Contentions of the parties.* The Loras retirement plan was effective in 1960. The Iowa Civil Rights Act became effective in 1965. 1965 Iowa Acts, ch. 121. The Act was amended in 1972 to include coverage of age discrimination. 1972 Iowa Acts, ch. 1032.

Under the Iowa Civil Rights Act it is an unfair or discriminatory practice, in violation of section 601A.7(1)(a), for a person [3] to discharge any employee because of the age of such employee, unless such action is based on the nature of the occupation.

Section 601A.15 provides an exception to this general rule. "The provisions of this chapter relating to discrimination because of . . . age shall not be construed to apply to *any retirement plan or benefit system of any employer* unless such plan or system is a mere subterfuge adopted for the purpose of evading the provisions of this chapter." § 601A.15 (emphasis added).

There is no question here as to whether Loras had a "retirement plan or benefit system" within the meaning of section 601A.15. Both parties agree that such a plan existed; however, they do not agree as to whether the college's policy of retirement at age sixty-five, as applicable to Dr. Schuster, was part of the plan. The parties also agree that the plan, as it applied to those individuals electing to participate in the benefits therefrom, was not a mere subterfuge adopted for the purpose of evading the provisions of the Act.

The Commission concedes in its brief that the section 601A.15 exception makes involuntary retirement because of age legal, where such retirement is undertaken pursuant to a "retirement plan or benefit system." The Commission claims, however, that the exception does not apply to a "retirement plan or benefit system" unless such plan or system provides income or pension after retirement to the specific retiree being terminated by the employer; and, therefore, the Loras plan is irrelevant to Dr. Schuster.

The Commission further concedes that if Dr. Schuster had participated in the Loras College benefit program, section 601A.15

Therefore, we pass the question of whether sections 601A.10(6)–(7). The Code 1973, should have been utilized for review of the Commission's ruling in the district court.

**3.** Loras College is a person under the definition in Section 601A.2(2), which provides:

2. "Person" means one or more individuals, partnerships, associations, corporations, legal representatives, trustees, receivers, and the state of Iowa and all political subdivisions and agencies thereof.

would clearly exempt Loras from the application of Chapter 601A.

Loras asserts, relative to Dr. Schuster, that because section 601A.15 excepts "*any* retirement plan or benefit system" from the discrimination provisions of chapter 601A when the plan is bona fide and not a mere subterfuge, an employee may be retired at age sixty-five when: the benefit program provides for mandatory retirement at age sixty-five; the employee is aware of the overall plan and its retirement provisions; the benefits from the plan are available to the employee at his option; the terms of the employee's contract provide for one academic year of employment non-renewable at the option of either party; and the overall plan includes the employer's policy to retire all faculty members at age sixty-five.

Both parties cite a number of federal cases interpreting 29 U.S.C. § 623 [4] of the federal Age Discrimination in Employment Act of 1967 in support of their various positions. The Commission cites the case of *Hodgson v. American Hardware Mutual Insurance Co.,* 329 F.Supp. 225 (D.C.Minn. 1971) (person electing not to participate in a benefit plan could not be involuntarily retired before age sixty-five pursuant to the plan). However, it is significant to note that the *Hodgson* case was interpreting the federal statute that exempts a "bona fide employee benefit plan," whereas our Iowa statute exempts "*any* retirement plan." Section 601A.15 (emphasis added); 29 U.S.C. § 623(f)(2) (1970). Thus, that federal district court was interpreting a federal statute that differed significantly from the exemption provisions of Iowa's Act. As we said in *Franklin Manufacturing Company v. Iowa Civil Rights Commission,* 270 N.W.2d 829, 831 (Iowa 1978), we are not bound by federal cases construing a federal statute when we are called upon to construe our own Civil Rights Act. We decline to follow *Hodgson* and the other federal cases cited by the parties.

We first consider the purposes of the Iowa Civil Rights Act and the "retirement plan" exception thereto. We will then consider: what is a retirement plan under section 601A.15; what constituted the Loras retirement plan; whether it applied to Dr. Schuster; and whether Loras violated section 601A.7(1)(a) when it retired him.

*B. The purposes of Chapter 601A and the exception of section 601A.15.* Our task is to determine the meaning of the language in section 601A.15 as it relates to chapter 601A. "Interpretation of a statute is a question of law which must be determined by the judiciary." *West Des Moines Education Association v. Public Employment Relations Board,* 266 N.W.2d 118, 124 (Iowa 1978); *see Iowa State Department of Health v. Hertko,* 282 N.W.2d 744, 749 (Iowa 1979) (citing *West Des Moines Education Association*). We do not purport to pass on the wisdom of mandatory retirement at a particular age.

"[T]he polestar of all statutory construction [is the] search for the true intention of the legislature." *Iowa National Industrial Loan Co. v. Iowa State Department of Revenue,* 224 N.W.2d 437, 439 (Iowa 1974). While this rule should be used to the exclusion of all other rules of statutory construction, the other rules must be applied together in light of the particular facts of each case when used to help us find the true legislative intent. *Id.*

We now set forth the general rules of statutory construction considered in this case.

(1) In considering legislative enactments we should avoid strained, impractical or absurd results.

(2) Ordinarily, the usual and ordinary meaning is to be given the language used but the manifest intent of the legislature will prevail over the literal import of the words used.

4. 29 U.S.C. § 623(f) (1970), provided in part:
   It shall not be unlawful for an employer . . . to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this [Act], except that no such employee benefit plan shall excuse the failure to hire any individual . . . . .

(3) Where language is clear and plain, there is no room for construction.

(4) We should look to the object to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.

(5) All parts of the enactment should be considered together and undue importance should not be given to any single or isolated portion.

(6) We give weight to the administrative interpretation of statutes, particularly when they are of longstanding.

*Id.* at 440 (citations omitted).

In *Franklin Manufacturing Company* we had the opportunity to interpret section 601A.12, The Code 1977, which is identical to section 601A.15, The Code 1973. The question before us in that case was "whether [section 601A.12] exempts all benefit systems or only those relating to retirement." 270 N.W.2d at 831. We held that the legislature intended to exempt, under section 601A.12, "only those plans or benefit systems relating to retirement." *Id.* at 832.

While the Act does not contain a separate section declaring the legislative purpose and policy behind the Act, it is obvious from the clear and plain language of the statute itself that its primary purpose, in the context of this case, is to prevent age discrimination in hiring and discharging workers. *See* § 601A.7.

The legislature, within its broad discretion, has seen fit to provide an exception to the discrimination provisions of Chapter 601A when an employer hires or discharges employees because of age, where the employer does so pursuant to "any retirement plan or benefit system [that is not] a mere subterfuge adopted for the purpose of evading the provisions of [the Act]." § 601A.15.

The exception protects the employer's right to require the involuntary retirement of employees on the basis of their age, but only when the employer does so pursuant to a "retirement plan or benefit system" within the meaning of section 601A.15.

It is important to note that, without this exception, an employer would never be permitted under the Act to retire an employee because of his age, unless such retirement is based upon the nature of the occupation. The Iowa Act (unlike its federal counterpart, 29 U.S.C. § 623 *et seq.,* which allows discrimination on the basis of age, unless the individual is between ages forty and seventy) has no limiting age category to which it applies. The Iowa Civil Rights Act applies across the board with respect to individuals of all ages.

A recent amendment to section 601A.13, The Code 1979, which was the same as section 601A.15, The Code 1973, provides additional support for the proposition that the exception allows involuntary retirement pursuant to a bona fide "retirement plan or benefit system." The amendment provides: "However, a retirement plan or benefit system shall not require the involuntary retirement of a person under the age of seventy because of that person's age." § 601A.13, The Code 1979, *as amended by* 1979 Session, 68th G.A., ch. 35, § 10. By implication, the exception statute in effect when Dr. Schuster was terminated in 1973, with which we concern ourselves today, permitted the involuntary retirement of employees even though they were under the age of seventy, if such termination was pursuant to a bona fide "retirement plan or benefit system."

Beyond the general policy of favoring the involuntary retirement of employees when done pursuant to section 601A.15, the Act does not provide any specific guidance as to what is meant by "any retirement plan or benefit system" as that phrase is used in section 601A.15. Even if we discern that the legislature was attempting to favor retirement plans and benefit systems that compensate employees over those that merely discharge an employee without compensation, the question still remains as to what constitutes "any retirement plan or benefit system" within the meaning of section 601A.15.

■ *C. Retirement plan under section 601A.15.* We believe a "plan" in the context of section 601A.15 is "an orderly ar-

rangement of parts in terms of an overall design or objective . . . a schematic table or program of related parts or items . . . a detailed and systematic formulation of a large scale campaign or program of action." Webster's Third New International Dictionary 1729 (unabridged 1976). The definition of "retirement plan" cannot be limited to the mere document that provides the benefits to the employee, even though such a document constitutes a major portion of the plan.

■ Not only did Loras provide for the payment of benefits to employees when they retired, but it also had an institutional policy establishing age sixty-five as the retirement age for all individuals in Dr. Schuster's position. This policy, of which Dr. Schuster had knowledge, must be considered as part of Loras College's "retirement plan or benefit system" within the meaning of section 601A.15.

The "retirement plan or benefit system" used by Loras clearly applied to Dr. Schuster. He was subject to Loras' policy to retire all faculty members at age sixty-five, and he had the option of participating in the benefit program.

*D. Receipt of benefits by retired employees.* We next must determine whether section 601A.15 requires the payment of benefits by the employer to an employee before he can be involuntarily retired on the basis of age without violating section 601A.7, where that employee had the free choice to participate or not participate in the provided benefits. The issue, stated in terms of the statutory language, takes us back to the question of whether the "retirement plan or benefit system" employed by Loras College is a "mere subterfuge adopted for the purpose of evading the provisions of this chapter." § 601A.15.

The Commission found that Loras had in existence a bona fide retirement plan which was not a mere subterfuge to evade the operation of chapter 601A. It is clear, however, from the Commission's decision, that it only considered the plan bona fide in relation to those employees who elected to participate in the benefits offered through Loras College's plan.

We believe the opportunity to participate in the benefits of a "retirement plan or benefit system" is all that section 601A.15 requires. A retirement plan is not a "mere subterfuge" when it gives an employee the freedom to choose between participating in the benefits of a "retirement plan or benefit system" established by the employer and receiving presently that portion of his pay check that would normally be applied toward the employer's plan. It is understandable that an employee would desire the immediate use of his income for some present needs or desires. We do not believe the legislature intended under Chapter 601A to require an employer, who provides his employees with such an option, to retain an employee indefinitely when that employee makes the conscious choice to receive all his earnings presently, as opposed to paying a portion of his earnings towards the employer's plan and sharing in the future benefits of the program. Where the option to participate in the benefits from the plan is given to the employee, any discernible policy of providing benefits upon the involuntary retirement of an employee is not circumvented. The employee still has the freedom to choose to participate in the benefit portion of the plan.

A contrary construction would lead to an impractical and absurd result.

■ We hold today that when an employer's "retirement plan or benefit system" offers an employee the option to participate in the benefits from such a plan and the plan requires the retirement of the employee at a given age, the conscious decision by the employee not to participate in the retirement benefits from the plan does not entitle the employee to be retained beyond the mandatory retirement age established by the plan. Such an option does not render the plan a "mere subterfuge adopted for the purpose of evading the provisions of" the Iowa Civil Rights Act.

■ Because the Loras retirement plan did apply to Dr. Schuster and the plan came within the exception in section 601A.15, the

Iowa Civil Rights Act in effect in 1973 did not apply to Loras' actions under the present record. We affirm the ruling of the district court in that regard.

We also note that Loras adopted its retirement plan in 1960, approximately five years prior to the date upon which the Iowa Civil Rights Act first became law, and approximately twelve years prior to the date age discrimination was made part of the Act. Although we need not hold today that a "retirement plan or benefit system" within the meaning of section 601A.15, adopted prior to the effective date of the Act was per se adopted *without* the purpose of evading the provisions of the Act, to show an intent in 1960 to evade the purpose of a statutory provision adopted in 1972 attributes, at the minimum, a tremendous amount of foresight to the employer. *See United Air Lines v. McMann*, 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402, 413 (1977).

We do not determine whether a retirement plan, which does not pay benefits, or at least provide the employee with the option to participate in adequate benefits from the employer's benefit program, properly falls within the section 601A.15 exception, nor do we make any additional determination as to the meaning of section 601A.13, The Code 1979, *as amended by* 1979 Session, 68th G.A., ch. 35, § 10.

AFFIRMED.

All Justices concur except McCORMICK, LeGRAND, ALLBEE and LARSON, JJ., who dissent.

McCORMICK, Justice (dissenting).

When Loras College determined it was necessary to reduce the faculty of its modern foreign language department from five to three members, it selected the two persons for discharge on the basis of age. Because I believe this is exactly the kind of discrimination which is prohibited by the Iowa Civil Rights Act, I respectfully dissent.

I. I do not believe section 601A.15 allows involuntary discharge of employees at any age. Rather I believe its concern is the financial integrity of retirement plans and benefit systems. Pension programs in effect at the time the sex and age discrimination provisions of the Civil Rights Act were adopted may have been premised in part upon the employer's right to make distinctions based on sex and age. The actuarial soundness of those programs would be threatened if the statute removed the right to continue those distinctions. As to future pension programs, the exception permits distinctions based on sex and age only to the extent that those factors have actuarial significance in determining benefits payable in voluntary pension plans. Even in those plans, however, an employer's contribution could not be made to depend on the employee's sex or age.

As to the age factor, this essentially is the view of the dissent in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), which involved the exception in section 623(f)(2) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34 (1970). Although the federal exception refers only to age, it is otherwise similar to the Iowa exception. The majority in *McMann* held the federal exception allowed involuntary retirement of employees in the protected age group who were participants in a retirement plan which antedated the statute.

In 1978 Congress responded to the *McMann* decision and earlier similar decisions by two courts of appeals by amending the statute with the stated purpose of clarifying its original intention to prohibit involuntary retirement of persons in the protected age group. *See* H.R.Rep.No.950, 95th Cong., 2d Sess. 8 (1978), U.S.Code Cong. & Admin.News 1978, p. 504; S.Rep.No.493, 95th Cong., 1st Sess. 9–10 (1977). The amendments are the Age of Discrimination in Employment Act Amendments of 1978, Pub.L.No.95–256, § 2(a), 92 Stat. 189.

We have recognized enactments in similar circumstances, with considerably less evidence, to be clarifying rather than substantive. *See Barnett v. Durant Community*

*School District*, 249 N.W.2d 626, 629–30 (Iowa 1977).

To ignore the federal legislative history is to ignore the Iowa legislative history because Iowa adopted amendments to the Iowa Civil Rights Act based on the federal amendments. *See* 1979 Sess., 68th G.A., ch. 35. These amendments included the addition of the following language to what appeared in the 1973 Code as section 601A.15: "However, a retirement plan or benefit system shall not require the involuntary retirement of a person under the age of seventy because of that person's age." *Id.* § 10. This provision prohibits what this court today says section 601A.15 previously permitted. However, the legislature explained that it intended to do what Congress did in amending the ADEA:

> This bill changes the mandatory retirement laws and age discrimination laws in response to the 1978 amendments to the federal Age Discrimination in Employment Act of 1967 and makes changes in the civil rights law regarding age discrimination.

> .    .    .    .    .

> Section 10 prohibits pension plans from requiring mandatory retirement prior to age seventy. The exemptions are the same as those provided by federal law.

1979 Sess., 68th G.A., H.F. 680, at 5–6 (committee explanation).

I believe this shows an intention of the Iowa legislature to adopt the intention of Congress and, in so doing, to clarify its original intention in enacting the exception. When the legislature bases a statute on a federal statute, we presume it intends what Congress intended. *Stromberg Hatchery v. Iowa Employment Security Commission*, 239 Iowa 1047, 1050, 33 N.W.2d 498, 500–01 (1948).

The Iowa statute previously provided no age limit on its prohibition against mandatory retirement. Before the 1978 amendments, the federal statute permitted mandatory retirement at age sixty-five. The amendments raised the limit to seventy. In bringing the Iowa statute into conformity, the legislature adopted the same age limit.

Thus, the coverage of the Iowa statute was broader before the recent amendments, rather than more restrictive. At the very least, our legislature has signified its agreement with Congress that retirement plans and benefit systems which involuntarily retire individuals in the protected class on the basis of age have never been permitted by the exception. *McMann* has never been the law of Iowa. Congress has repudiated the *McMann* construction of the federal statute, and the Iowa legislature has shown it has always intended to proscribe age discrimination to at least the same extent.

II. This construction of the Act is also supported by comparing the Iowa prohibition against age discrimination with its prohibition against sex discrimination.

The amendments prohibiting sex discrimination were added to the Act in 1970. 1970 Sess., 63d G.A., ch. 1058. The exception relating to retirement plans and benefit systems was part of those amendments. *Id.* § 5. The age discrimination amendments were enacted in 1972. 1972 Sess., 64th G.A., ch. 1032. As part of those amendments, age was added to the exception. *Id.* § 3.

From this it is clear the exception is intended to apply in the same way to distinctions in retirement programs based on sex and age. Thus, under the court's construction, the exception could be used to force retirement of all members of one sex, if all members of that sex had the option at some point in the past to participate in a pension system which would be available upon involuntary retirement.

The same logic would uphold discharging two faculty members on the basis of sex rather than age if that were part of the Loras retirement plan. I do not believe the legislature intended that an employee could be involuntarily discharged on either basis, but if one is appropriate so is the other.

III. The majority's assumption that the Act permits involuntary discharges based on age rests in part on rejection of federal court cases construing the ADEA.

However, when we previously refused to be persuaded by federal holdings in construing the Act, it was because we believed our statute was intended to afford broader coverage. *See, e. g., Franklin Manufacturing Co. v. Iowa Civil Rights Commission,* 270 N.W.2d 829, 831 (Iowa 1978); *Quaker Oats Co. v. Cedar Rapids Human Rights Commission,* 268 N.W.2d 862, 865–67 (Iowa 1978). In *Franklin* this led to a narrow construction of the same exception as is involved in this case. Today the *Franklin* holding is turned inside out. Federal holdings are now rejected because their construction of the federal exception is too narrow, and this court construes our similar exception more broadly. It is not necessary that the court follow federal cases to reach a contrary result; it is only necessary to follow the teaching of *Quaker Oats* and *Franklin.*

IV. Even if section 601A.15 allowed involuntary retirement of protected employees, I do not believe a non-participant in the pension system would come within the exception. This was the holding in *Hodgson v. American Hardware Mutual Insurance Co.,* 329 F.Supp. 225 (D.Minn.1971). In that case the Secretary of Labor challenged a pension plan which provided for retirement of all male employees at age 65 and all female employees at age 62. It was applied to employees who had elected before enactment of the ADEA not to participate in the plan. The court held the plan violated the federal statute by prescribing mandatory retirement and also held the federal exception did not apply. On the latter point the court said:

> Retirement at age sixty-two for Plan members is permitted [by section 4(f)(2)] only because it is pursuant to the Plan. The retirement ages are determined actuarially and are part or parcel of the Plan. The defendant employer retires female Plan members at age sixty-two because it is compelled to do so under the terms of the Plan. However, retirement of non-members is not done because the plan compels it but because the employer desires to do so. [Defendant] probably has many sound business reasons for doing so—encouraging Plan membership, Plan

member morale, etc.—but § 4(a) of the Act is a clear Congressional determination that the overall economic interests of the country, as served through older worker employment, override such parochial interests of employers.

*Id.* at 228. The court conceptually equated the retirement policy with refusing to hire a sixty-three year old woman because of the plan, a practice which clearly would be prohibited. *Id.* at 229. The court also relied on an interpretive bulletin of the Secretary of Labor which stated the federal exception did not apply to non-participating employees. *Id.* at 228–29. *See* 29 C.F.R. § 860.-110(b) (1978).

I am unable to see any significance in the fact the federal exception is framed in slightly different language. The federal exception refers to a "bona fide employee benefit plan." The Iowa exception refers to "any retirement plan or benefit system." However, we have held "benefit system" means a benefit system which is part of a retirement plan. *Franklin Manufacturing Co. v. Iowa Civil Rights Commission,* 270 N.W.2d at 832. Similarly, the Iowa retirement plan must also be "bona fide" because it cannot be "a mere subterfuge adopted for the purposes of evading the provisions of this [Act]." § 601A.15; *see Walker Manufacturing Co. v. Industrial Commission,* 27 Wis.2d 669, 683, 135 N.W.2d 307, 315 (1965) (holding there is no essential difference between statutes using "bona fide" and those using "subterfuge").

I would follow the *American Hardware* case. It is difficult to understand how the *American Hardware* result can be characterized as "absurd." Under this court's opinion, Dr. Schuster is denied the protection of the Civil Rights Act on the basis of a decision he made when he could not have known of that effect. In contrast, participants in the pension plan receive a valuable financial benefit in exchange for their agreement to subject themselves to the Loras retirement policy. Moreover, Loras has not had to contribute toward a pension for Dr. Schuster.

Other states have expressly recognized a non-participation option which produces the result which this court denigrates. Statutes in Connecticut and Georgia expressly allow employees to work beyond ages fixed in retirement plans in exchange for waiver of pension benefits. *See* Conn.Gen.Stat. §§ 31–126b, 31–126e (1979); Ga.Code § 54–1102 (1975). In California even a participating employee can continue to work without losing accrued benefits. Cal.Lab.Code § 1420.15 (West Supp.1979).

In sum, I would reverse the trial court on either of two alternative grounds. First, the Civil Rights Act in effect at the time relevant here prohibited mandatory retirement at any age. Second, even if the exception in section 601A.15 were otherwise applicable, it would not apply to non-participating employees.

LeGRAND, ALLBEE and LARSON, JJ., join this dissent.